[Civil No. 177.  Filed August 31, 1887.]

[S. C. 15 Pac. 273.]

E. O. CARLYON, Plaintiff and Respondent, v. J. C. FITZHENRY et al., Defendants and Appellants.

1. BAILMENT—GRATUITOUS—DUTY OF BAILEE—AGREEMENT TO USE MONEY DEPOSITED—RELATION CHANGED TO DEBTOR UPON USE OF MONEY.—Where a bailee as matter of accommodation allows money to be deposited in his safe he is not responsible for the loss of the money through the robbery of the safe, being only bound to exercise the same care of the deposit as he is in the habit of bestowing on his own money; and if there be an agreement for the use of the money deposited the relation of debtor and creditor commences with the use, and if the robbery took place before that time the loss must fall upon the depositor.

2. TRIAL—INSTRUCTIONS TO JURY—IGNORING EVIDENCE.—Where the evidence tends to show that money was deposited with defendants by plaintiff for safe keeping and defendants requested the use of the money, if they needed it, but had not used it, an instruction to the jury that if they believed that defendants had made such request and that it was for the benefit of defendants then the relation of bailor and bailee was changed to debtor and creditor whether the money was in fact used or not was erroneous.

APPEAL from a Judgment of the District Court of the First Judicial District in and for the County of Cochise. Reversed.

The facts are stated in the opinion.

Thomas Mitchell, for Appellants.

In 1 Addison on Contracts, p. 530, (Am. Ed. Notes by Abbott,) it is said: "If a sum of money be bailed by one man to another, under circumstances fairly leading to the presumption that the bailee has authority from the bailor to use it or not as he may think fit, the bailee will stand in the position of a mere depository or he will be clothed with the increased duties and liabilities of a borrower, according as he may or may not have thought fit to avail himself of the privilege of user impliedly accorded to him. If he put the money in a coffer or a bag, and refrains from using it, and preserves its identity, with the intention or restoring it *in individuo* to the bailor, he undertakes the duty of a mere depository, and is bound only to take the same care of the deposit that he is in the habit of bestowing on his own money, and will not be for loss by robbery, fire or any other casualty. But if he were to mix the sum deposited with his own money, with the intention of restoring an equivalent, and so to destroy the identity and individuality of the subject matter of the bailment, this would be a user of the money, which would at once alter the nature and character of the bailment converting it into a loan for use and consumption, with its increased duties and responsibilities."

The above seems to fit this case exactly. We have been unable to find a single common law authority on this ques-

tion. Our law of bailments is admittedly borrowed from the civil law. The high authority of Addison on Contracts renders the adoption of the rule of the civil law in the text an authority in itself, in the absence again, of any authority to the contrary. To hold with the trial court would lead to disastrous results. An attaching creditor might take the subject matter of the bailment. An assignee could take it and the bailor perhaps be compelled to receive a small dividend out of his own money.

And finally, attention is called to the analogy between the conditional agreement for a loan in this case, and the cases of conditional sales, in which case it is held that the property does not pass until the performance of the condition. Chap. III, Benjamin on Sales.

A. R. English, (Wm. Herring, of counsel,) for Respondent.

PORTER, J.—Defendants were partners in the general grocery business. The defendant Fitzhenry, in the absence and without the knowledge of defendant Mansfield, received from the plaintiff $400 in gold coin, and at his request, and for his accommodation, put the money in the firm's safe for safekeeping. Mansfield knew nothing about the transaction until after the loss of the money. The plaintiff and Fitzhenry being together in defendants' store, in the absence of Mansfield, Fitzhenry told the plaintiff "that the defendants might be short of cash for freight, and asked him if they might use one hundred or one hundred and fifty dollars of the money if they needed it, to which the plaintiff replied that they might use the whole of it, provided he could have it by the first of the following month." The defendants' safe was afterwards robbed, and the plaintiff's money, among other things, lost.

The important question arises, did that conversation change the relation of bailor and bailee to that of creditor and debtor, without regard to whether the money was used or not? The true rule is as stated in 1 Add. Cont. 530, cited by counsel for plaintiff, and is as follows: "If a sum of money be bailed by one man to another under circumstances fairly leading to the presumption that the bailee has author-

ity from the bailor to use it or not; as he may think fit, the bilee will stand in the position of a mere depositary, or he will be clothed with the increased duties and liabilities of a borrower according, *as he may or may not have thought fit to avail himself of the privilege of user,* impliedly accorded to him. If he puts the money in a coffer or bags, and refrains from using it, and so preserves its identity, with the intention of restoring it *individuo* to the bailor, he undertakes the duty of a mere depositary, and is bound only to take the same care of the deposit that he is in the habit of bestowing on his own money, and will not be responsible for loss by robbery, fire, or any other casualty. But if he were to mix the sum deposited with his own money, with the intention of restoring an equivalent, and so destroy the identity and individuality of the subject-matter of the bailment, this would be a user of the money, which would at once alter the nature and character of the bailment, converting it into a loan for use and consumption, with its increased duties and responsibilities.''

We cannot see that there was an absolute loan of the money created by the conversation between plaintiff and Fitzhenry. It was contingent upon the necessity for the use of the money. No consideration having passed, the plaintiff did not lose dominion over the money till its acceptance. Fitzhenry testifies that the contingency did not arise, and that the money remained in the safe as at first placed, till the robbery. We find a case directly in point, cited by counsel, in 60, Miss. 330, (reported in 45, Am. Rep. 410,) *Caldwell* v. *Hall,* in which the opinion was rendered by the eminent Judge Chalmers, which says: ''Appellee Hall placed in the iron safe of appellant Caldwell the sum of thirty-five dollars. It was contained in an open box, and to it and from it Hall added and withdrew at his pleasure, so that at one time he had on deposit as much as seven hundred dollars. The money was never mingled with Caldwell's, nor was any receipt given for it, nor any entry of it made upon his books. His book-keeper, who carried the key of the safe, sometimes used small portions of it in making change, always dropping into the box tickets, showing the amount so withdrawn, and always replacing them within a

few days. His habit in this regard was known to and acquiesced in by both the depositor and depositary. Some months after the date of the original deposit, Caldwell's safe was robbed, without any fault or negligence on his part. His own money was lost along with that of Hall and other depositors. Caldwell was not a banker, but a merchant, and the deposits belonged to friends and customers to whom he had not made himself liable. The day before the robbery his book-keeper used fifteen dollars or twenty dollars of Hall's money, which not having been replaced, he paid to Hall after the robbery. This suit is brought by Hall to recover the balance of the sum stolen. The right to recover is rested upon the statement testified to by Hall, but denied by Caldwell, that at the time of the first deposit it was understood and agreed between the parties that the money was to be used by Caldwell in his business, if he so desired, and that it was received on this basis. It is not claimed that Caldwell actually then became the borrower of the money, and that the relation of creditor and debtor then arose but that Caldwell became a bailee for the money, with an agreement to return it in specie, or to use it and repay with other money at his option. * * * In order for this suit to be successfully maintained such a state of facts must be shown as will warrant the idea that Caldwell, when the money was deposited, became at once the debtor of the depositor; and testing the case by Hall's own testimony, it is evident that such was not the contemplation nor agreement of the parties. The true aspect of the case, under the facts testified to by him. The money was received by Caldwell as a bailee, without reward, and was to be so held and accounted for by him, with permission, however, to use it in his business, if at any time thereafter he should elect to do so. If he *did* use it, he was to become at once the debtor of the depositor. If he did *not,* but on the contrary it should continually remain on deposit at all times subject to be drawn out by the depositor whenever he chose, and without consultations with Caldwell, the latter remained a bailee without hire and bound only for that ordinary care demanded of persons occupying that position. It is not pretended by

appellee that appellant, at the time of the deposit, borrowed the money or in any way indicated a present intention to appropriate it to his own use; and the subsequent manner of dealing with it by both parties shows that it continued to be regarded by them both as the property of the depositor. Under this state of facts, there was no liability upon the depositary.''

The defendants requested the court to charge the jury as follows: ''The court instructs the jury that, although they may find from the evidence that the plaintiff, at the request of the defendant Fitzhenry, consented that the defendants might use a part of the money which he had deposited with them for safe-keeping, if they needed it, that alone would not constitute a loan, and that the plaintiff cannot recover on the third cause of action, unless you further find from the evidence that the defendants did in fact use the money.'' But the court refused so to charge, but charged the jury that if they ''believed from the evidence that the defendant Fitzhenry requested the plaintiff to permit him to use the said money, or a part thereof, and the plaintiff consented that he might so do, and if they also believed that this transaction was one for the benefit of the firm, then the relation of bailor and bailee, which had heretofore existed between the parties, was changed to one of creditor and debtor, as to the amount which the plaintiff consented that the defendants might have use of, and the plaintiff would be entitled to a verdict on the third cause of action for that amount, whichever the jury might find it to be from the evidence, whether the money was in fact used or not.'' The refused instruction should have been given, and the one given should have been refused. Before the use of the money by defendants the contract was unexecuted and the title had not passed to defendants.

The judgment is reversed and the cause remanded.