KNIGHTS v. PIELLA.[1]

1. BAILMENTS—GOODS SENT WITH PRIVILEGE OF PURCHASE.

    A letter from a retail dealer in jewelry to a wholesale dealer, stating that the former has a customer for a diamond, and asking the latter to send him a number of stones, and suggesting that he may have to keep them for ten days or two weeks, as the customer is slow on selection,—is merely a request to send goods with the privilege of purchase; and the custody of the goods sent in pursuance of the letter is in the nature of a bailment.

2. SAME—DEGREE OF CARE REQUIRED.

    The bailment in such case being for the mutual advantage of the parties, the bailee is held to the exercise of ordinary care and diligence only in his custody of the goods.

3. SAME—GENERAL ISSUE—DEFENSES — PRESUMPTION OF NEGLIGENCE.

    In an action by the bailor to recover the value of the goods from the bailee upon failure of the latter to redeliver, the bailee may show, under a plea of the general issue, that the goods were stolen from him; and no presumption of negligence arises from the mere fact of the loss by theft.

[1] Rehearing denied January 12, 1897.

4. SAME—BURDEN OF PROOF.

    The bailee in such case having shown a fact which *prima facie* excuses his failure to redeliver, the burden rests upon the bailor to prove want of due care.

5. SAME—PROMISE TO PAY FOR GOODS—EVIDENCE.

    A letter written by the bailee to the bailor immediately after the theft, apprising the bailor of the fact, and promising to pay for the goods, does not conclusively establish the liability of the bailee, independent of all the other circumstances surrounding the transaction.

Error to Ingham; Person, J. Submitted October 21, 1896. Decided December 1, 1896.

*Assumpsit* by Charles H. Knights and another against Charles A. Piella for the value of certain diamonds sent to defendant on selection. There was a judgment for defendant, and plaintiffs bring error. Affirmed.

*William A. Fraser* (*Varnum & Anderson*, of counsel), for appellants.

*Jay P. Lee*, for appellee.

HOOKER, J. The plaintiffs were wholesale dealers doing business in Chicago, and defendant a retail dealer in jewelry at Lansing. The defendant wrote, and plaintiffs received, the following letter, viz.:

                    "LANSING, MICH., June 21, 1893.
"C. H. KNIGHTS & CO.

    "*Sirs:* I have a customer for a diamond. I think he will take about one and one-half carat stone. Send me some, but good qualities. If I sell him a stone, it will sell a half dozen more in a short time. He is a man of big influence. Send them from one and one-fourth up to two carats. Send two or more at one and one-half carats, in different quality, if you can spare them. I may have to keep them for ten days to two weeks. He pretty slow on selection, but good as ———.

                    "CHAS. A. PIELLA."

The plaintiffs forwarded to him seven diamonds, aggregating $1,033.19 in value, accompanied by the following memorandum:

"Memorandum from C. H. Knights & Co., Wholesale Dealers, Columbus Memorial Building, Chicago, corner State and Washington streets.

"CHICAGO, June 22, 1893.

"Do not remove or deface cards or tags on goods.

"C. H. KNIGHTS.                    W. H. GLEASON.

"Duplicate.   These goods belong to us until paid for.

"MR. C. A. PIELLA,
       "Lansing, Mich.:

| | |
|---|---|
| 2324 one dia. 2 1-16 at | $80 00 |
| 2328 one dia. 1¾ | 115 00 |
| 2325 one dia. 1⅝ 1-16 1-64 | 96 00 |
| 2223 one dia. 1⅝ | 82 00 |
| X one dia. 1½ | 110 00 |
| 2330 one dia. 1¼ 1-16 1-32 | 82 00 |
| 2321 one dia. 1¼ $76.00 (per carat)." | |

The testimony of the defendant shows that he received the diamonds, and that the same were placed in a show case, from which they were stolen in the course of the next hour.   Defendant having refused to pay for the stones, this action was brought to recover their value. The court instructed the jury that the title to the goods was in the plaintiffs, and that the goods were left with the defendant to be sold for their mutual benefit, or returned, and that the defendant was not an insurer of the safety of the goods, and was held to the exercise of ordinary care only, and that the burden of showing the want of such care was upon the plaintiffs.   It was contended by the plaintiffs' counsel that the defendant acknowledged his liability by the following letter, written soon after the loss:

"LANSING, MICH., June 23, 1893.

"C. H. KNIGHTS & Co.

"*Sirs:* Forepaugh's circus is in town today.   I just received your package of diamonds, but I didn't have them long.   I got robbed of them after I received them,—one

hour afterwards; my stones, and the stones I got from you this morning. I notified the Pinkertons, in Chicago; the Jewelers' Alliance; also, H. H. Botts, of New York. I belong to this insurance company. Will you please send me a duplicate bill? They stole bill and all, with the book, out of my case. Don't be alarmed. I shall pay you every cent I am indebted to you,—it is all the debts I have in God's world,—even if I have to sell my home to pay it.

"Yours truly,

"Chas. A. Piella."

Upon a motion by plaintiffs' counsel to strike out certain testimony, the following colloquy between court and counsel occurred:

"*Court:* Setting aside the second letter for the purpose of this question, in considering it, do I understand that it is agreed between counsel that, if a sufficient degree of care were exercised, the loss would follow the title to the property?

"*Mr. Day:* I think that is true; no question about it.

"*Mr. Varnum:* I have no doubts about that question, your honor.

"*Court:* Upon that question I have some doubts. I have not any doubt as to where the title to this property was at the time of the alleged robbery or loss.   *   *   * This is a reservation of title, clearly, under the circumstances of this case, on the part of C. H. Knights & Co. Under that situation the goods are said to have been stolen. I am not quite certain myself as to the duties imposed upon a consignee in a case of this kind, concerning the return of the goods; but, on the basis of what was stated in this case, I should assume that the loss would follow the title, providing the consignee had exercised such care over the goods as their character, value, and the circumstances of the case required,—reasonable and fair care. I feel very certain as to where the title was. I do not feel quite so certain as to the consequences. This matter must come to an end somewhere. I am going to take the opinion of the jury as to the question of care exercised by Mr. Piella in this matter.

"*Mr. Varnum:* What position does your honor take in regard to the letter of June 23d? Is that to be submitted to the jury?

" *Court:* My present view about that letter is that, if Mr. Piella exercised proper care under the circumstances, there was no liability upon his part, and the letter would not create one. If he did not exercise that care, there was a liability following, by the terms of that letter, which would permit you to sue in *assumpsit* without a special count. It would be an express promise that would not bring it within the common counts."

This excludes the claim now made that the defendant unconditionally promised to purchase or return the diamonds. The letter written by the defendant in the first instance was not equivalent to an unconditional order for goods, but a request to send goods with the privilege of purchase. It was not even a purchase with the right to return reserved, for there was no promise to buy. In this respect the case differs from those which hold that the vendee in a conditional sale takes the risk of the loss or destruction of the property. *Walker* v. *Owen*, 79 Mo. 569; *Snyder* v. *Murdock*, 51 Mo. 175; *Burnley* v. *Tufts*, 66 Miss. 48 (14 Am. St. Rep. 540); 1 Beach, Cont. § 141, and cases cited. The custody of these goods was more in the nature of a bailment, as contended by counsel. Schouler, Bailm. §§ 3, 6. As said by Mr. Justice COOLEY in *Dunlap* v. *Gleason*, 16 Mich. 161 (93 Am. Dec. 231), the defendant might "terminate the bailment and purchase by payment." See, also, *Dewes Brewery Co.* v. *Merritt*, 82 Mich. 201; *Powell* v. *Eckler*, 96 Mich. 538; *Caldwell* v. *Hall*, 60 Miss. 330 (45 Am. Rep. 410); *Weir Plow Co.* v. *Porter*, 82 Mo. 23; *Knight* v. *Worsted Co.*, 2 Cush. 283.

It being apparent that, upon the admitted facts, the title was in the plaintiffs, and upon the admitted law, as above shown, that the court had a right to direct the jury that the owner of the title must bear the loss, unless the defendant was negligent, or the second letter showed a reason to the contrary, many of the questions raised become unimportant. We think the letter in question did not show a purchase, or an unconditional and

unqualified promise to return the stones; and, in our opinion, the circuit judge was right in saying that the defendant was called upon to exercise ordinary care and diligence, as the bailment was one for the mutual advantage of the parties. There is much conflict in the books upon the subject of the burden of proof in actions arising upon the loss or destruction of property while in the hands of the bailee. The jury were instructed that "the burden of proof is upon the plaintiffs, C. H. Knights & Co., to show that he did not, and thus, by the preponderance of evidence, to show that he was lacking in that ordinary degree of care that I have mentioned."

Upon this record, the defendant has established the fact and circumstances of the theft, without contradiction. There is no presumption of negligence from the mere fact of the loss or theft, and while there is much reason for the rule, adhered to in many States, that the defendant has the burden of proving the fact of loss, it does not necessarily follow that a presumption of negligence arises; and, if the facts shown in connection therewith do not fail to excuse, the *onus* is on the plaintiffs to shake defendant's exculpation. This does not deny the proposition that when the bailment is proved, and a refusal to deliver is established, the plaintiff has made out a *prima facie* case, and the inference of wrong by the defendant follows, or that it is then for the defendant to explain the loss and exonerate himself, which he may do by showing circumstances which *prima facie* excuse the failure to deliver. To this extent, and in this sense, a burden rests upon the defendant; but, if this question of fact becomes a disputed one, the evidence of the plaintiff must preponderate; and if the language of the charge, viewed abstractly, extends further, it cannot be said to have prejudiced the plaintiffs, under the established facts, the disputed question in this connection being whether or not the care exercised was equal to that to be expected from ordinarily prudent persons under similar conditions and

circumstances.   See Schouler, Bailm. § 23, for a discussion of this subject.

It remains to add that we think the defense was allowable under the plea of the general issue, being a complete answer to the claim of the conversion.

As it is not in our province to pass upon the disputed question of fact, we cannot disturb the verdict.

The judgment is affirmed.

The other Justices concurred.