BAEHR *v.* DOWNEY.

1. TROVER—PARTIES—RIGHT OF POSSESSION—AGENCY.

The owner of property, by intrusting its possession temporarily to an agent, does not preclude himself from maintaining an action against a third person for its conversion. So *held* where a partnership consigned goods to a member of the firm acting as its traveling salesman, and it was contended that the latter alone could sue.

2. INNKEEPERS — PROPERTY OF GUEST — FORWARDING — CONTRACT —CONSIDERATION.

The benefit accruing to an innkeeper from his observance of the custom of forwarding letters and packages to departed

guests constitutes a sufficient consideration for his agreement
to comply with such custom in a given case.

3. SAME—AUTHORITY OF CLERK.

The clerk of an inn has authority to bind the innkeeper by an
agreement with a departing guest to forward packages
received for the latter after his departure.

4. SAME—EXTENT OF LIABILITY.

Where an innkeeper agreed to forward a package which was
expected to arrive for a guest after his departure, and the
package was delivered to the innkeeper after the departure of
the guest, and was never returned or forwarded, the innkeeper
was liable as an ordinary bailee.

5. SAME—CONTRIBUTORY NEGLIGENCE.

In such case, the value of the package (*i. e.,* $300) not being
such as to require extraordinary precautions, a failure to mark
such value on the package, or to notify the innkeeper thereof,
was not such contributory negligence as would relieve the
latter from liability.

6. BAILMENTS—LIABILITY OF BAILEE—BURDEN OF PROOF.

The liability of a bailee is established *prima facie* by proof of
his receipt of the property, and failure to return it on demand;
he then having the burden of showing his freedom from neg-
ligence.

Case made from Ingham; Wiest, J. Submitted Jan-
uary 13, 1903. (Docket No. 34.) Decided May 12, 1903.

Trover by Herman Baehr and Marcus Loew, copartners
as Herman Baehr & Company, against Charles P. Dow-
ney and Oscar J. Downey, copartners as H. J. Downey's
Sons. There was a judgment for defendants, and plain-
tiffs assign error. Reversed.

Plaintiffs brought suit to recover the value of certain
goods claimed to have been lost at the hotel of the defend-
ants. The case was tried before the court without a jury,
and the following are the material facts as found by the
court:

The plaintiffs as partners, on the 17th day of October,
1900, were manufacturers of furs in New York City, and
the defendants were the proprietors of the Hotel Downey,

in the city of Lansing. Marcus Loew, one of the plaintiffs, was traveling salesman for the firm, and on the 17th and 18th days of October, 1900, he was a guest at the hotel of defendants. He arrived at the hotel October 17th, and paid his bill and left after lunch on October 18th. At the time of his departure from the hotel, he requested the clerk in the office of the hotel, to whom he paid his bill, to forward any letters or packages that might come for him that day to the Hibbard House, Jackson, Mich., and any letters or packages that might come to him after the day of his departure to him at the Palmer House, Chicago, Ill. The clerk stated to Mr. Loew that he would attend to the forwarding of any mail or packages in accordance with the direction given him. It is a general custom for proprietors of hotels of the class of defendants' to forward mail and packages addressed to those who have been their guests, upon request, to the place designated by such departing guest, and it is a practice for the hotel proprietors to keep a record book in which the directions for forwarding are recorded, and defendants kept such a record.

.October 17, 1900, at plaintiffs' place of business in New York City, thirteen cross sable mink scarfs of the value of $117, eight Baum marten scarfs of the value of $168, and one skunk scarf of the value of $5.50, were packed in a strong pasteboard box, wrapped in thick paper, and securely tied with string, and were shipped by plaintiffs by the National Express Company to Mr. Loew, Hotel Downey, Lansing, Mich., express charges prepaid. October 19, 1900, the National Express Company delivered this package at the Hotel Downey, and it was duly receipted for by an employé of defendants. Mr. Loew or the plaintiffs have never received the package so delivered at the hotel of defendants; it has not been received at the Hibbard House, Jackson, or the Palmer House, Chicago; and was never forwarded from defendants' hotel. Plaintiffs made their first demand for said goods on December 12, 1900, and the defendants, on December 18th, acknowledged their inability to find the goods or to produce them.

Defendants had no personal knowledge of the request of Mr. Loew that the package be forwarded to him, or of its receipt at their hotel, or of what subsequently became of it. No proof of any assignment of any right of action from Mr. Loew to plaintiffs was made. Mr. Loew registered at defendants' hotel as "M. Loew." No valuation was given to the express company when the package was delivered.

*Thomas, Cummins & Nichols,* for appellants.

*Montgomery & Clark,* for appellees.

Grant, J. (*after stating the facts*). 1. The stringent liability of innkeepers for the property of their guests is conceded. The learned circuit judge held that the contract to forward the package was one growing out of and based upon the relation of innkeeper and guest; that the practice of fowarding letters and packages to departed guests induces travelers to stop at a hotel following the custom, and inures to the benefit of the hotel proprietor, and was a sufficient consideration for the defendants' undertaking to forward the parcel. He, however, entered a judgment for the defendants, for the reason that the plaintiffs had parted with their right of possession when they shipped the goods to Mr. Loew, their agent; that Mr. Loew was the one deprived of possession, and not the plaintiffs; and that they could not maintain trover because they had not a conjoint right of possession. In this we think he was in error. It is a matter of common knowledge that traveling salesmen are usually agents, and not principals; that they do not represent themselves, but others; and that the goods they carry with them or receive from their houses are not their goods, but the goods of those they represent. In this case, however, one of the principals was the traveling agent of the firm. The possession of the agent inures to the benefit of the principal, and, whenever that possession is wrongfully interfered with by a third party, it is damage to the principal, and

not to the agent. Even were the principals undisclosed, and the defendants dealt with the agent as a principal, this would not prevent the real parties in interest from bringing suit in their own names to recover their property, or the damage done to it, or the value when lost. A party is not deprived of the right to pursue his own property although he has temporarily intrusted the possession of it to an agent. The wrong-doer is not in position to defend his own wrongful acts against the rightful owner by saying, "You intrusted the possession to your agent, and I am responsible to him, and not to you." Plaintiffs had made a proper demand for the goods, and, upon the failure of the defendants to produce them, their right of action became complete.

2. The next point urged to defeat recovery is: (1) That the plaintiffs cannot maintain this action, because the contract made with the clerk was not binding upon the defendants; and (2) that the relation of guest and innkeeper had ceased, and that defendants were only gratuitous bailees. The clerk was the authorized agent of the defendants, and his acts towards, and conduct with, guests, bound them, in so far as they were within the duties and liabilities of innkeeper. Mr. Loew had not ceased to be a guest of the hotel when the agreement to forward his letters and packages was made. It was simultaneous with the payment of his bill and notification that he was to leave. Even if the goods had been at the hotel, Mr. Loew would have had a reasonable time to remove them, and the innkeeper's extraordinary liability would remain until the expiration of such reasonable time, which would vary according to circumstances. Wandell, Inns, 102; *Murray* v. *Marshall*, 9 Colo. 482 (13 Pac. 589, 59 Am. Rep. 152); *Maxwell* v. *Gerard*, 84 Hun, 537 (32 N. Y. Supp. 849); *Adams* v. *Clem*, 41 Ga. 65 (5 Am. Rep. 524).

Counsel for the defendants cite several cases holding that innkeepers are not liable after the relation of guest and innkeeper has ceased and the guest has left. Such is the case of *O'Brien* v. *Vaill*, 22 Fla. 627 (1 South. 137,

1 Am. St. Rep. 219), where the guest paid his bill and left his baggage, saying he would be gone for a few days. So, in *Glenn* v. *Jackson*, 93 Ala. 342 (9 South. 259, 12 L. R. A. 382), the guest had paid his bill and intrusted his baggage to a servant not authorized to receive it. Similar facts and the same holding are found in *Gelley* v. *Clerk*, Cro. Jac. 188; *Hays* v. *Turner*, 23 Iowa, 214; and many other cases.

None of those cases are like this in facts or in principle. Innkeepers and travelers recognize the fact that it is essential to the proper conduct of business that letters and packages to business and traveling men be forwarded. It is a universal practice. Innkeepers keep books in which to enter such directions. The defendants kept a book for that purpose. The language in *Murray* v. *Marshall*, *supra*, recognizes "the increased demand for more extended accommodations in this respect." See, also, *Giles* v. *Fauntleroy*, 13 Md. 126, 136. As the circuit judge held, such contracts are for a valuable consideration. An innkeeper who would not do it would soon be left without custom. The contract is one made with a guest, and not with one who has ceased to be a guest. In *Maxwell* v. *Gerard*, *supra*, the guest, upon leaving the hotel to go on board a yacht for a cruise, arranged with the clerk to deliver his trunk to an expressman for transportation to his residence. It was held that the defendant's liability as innkeeper continued until he delivered the package to the expressman. That case is nearer, in its facts and in the rule enunciated, to this, than any other case cited, and than any we have been able to find. It is no hardship to hold innkeepers to this liability. The defendants, upon the receipt of the package, could at once have returned it to the express office for forwarding. Proper protection for the property of agents and their principals demands that this common-law liability attach until the innkeeper has complied with his contract for forwarding. The contract was within the scope of the clerk's authority. The burden of proof was upon the defendants to show facts

which would relieve them of their strict liability. They failed to do so.

3. It is next urged that plaintiffs were guilty of contributory negligence in not having the value of the package marked upon it, and in failing to notify the defendants of the contents of the expected package, and that plaintiffs permitted nearly two months to elapse before notifying defendants of the loss. The duty of the defendants was the same, no matter what the value of the package was. It was not of such great value as to require extraordinary precaution in this respect on the part of the plaintiffs. The defendants could at once have relieved themselves of liability by complying with their contract. We need not be understood as holding that there may not be circumstances which require extraordinary precautions on the part of the guest, under the principle recognized in *Smith* v. *Express Co.*, 108 Mich. 572, 578 (66 N. W. 479).

To the other point it is sufficient to say that the record does not disclose that the plaintiffs waited nearly two months. Plaintiffs proved the delivery of the property, the demand, and value, and rested. There is nothing to show that the demand was the first notice that defendants had of the loss of the property.

My Brethren do not agree with me that the strict liability of innkeeper attached to the defendants. They are of the opinion that that relation ceased to exist, and that the defendants were ordinary bailees of the property. Under these circumstances, plaintiffs made out a *prima facie* case by showing the property in the defendants' possession, and refusal or neglect to return on demand. The *onus* of exoneration was then upon the defendants. 3 Am. & Eng. Enc. Law (2d Ed.), 750. The rule as there stated is that, when the chattels are not returned at all, the law presumes negligence, and casts upon the bailee the *onus* of showing he was not negligent. This, undoubtedly, is the more modern and reasonable rule. See, also, *Knights* v. *Piella*, 111 Mich. 9, 14 (69 N. W. 92, 66 Am. St. Rep. 375); *Donlin* v. *McQuade*, 61 Mich. 275 (28 N. W. 114).

Inasmuch as defendants made no showing upon this point, the judgment must be reversed, and entered here for plaintiffs. Upon all the other points my Brethren agree with me.

Judgment reversed, and entered in this court for plaintiffs, with costs of both courts.

The other Justices concurred.