### GERRISH v. MUSKEGON SAVINGS BANK.

BAILMENT—SAFETY DEPOSIT VAULT—BANKS—NEGLIGENCE.
In an action of trover against a bank for the loss of valuables left for safe keeping by a depositor, who also rented a safety deposit box, evidence examined and *held* that the bank was a gratuitous bailee and that no such negligence on its part was shown as to require submission of the case to the jury.

Error to Muskegon; Russell, J. Submitted October 4, 1904. (Docket No. 1.) Decided October 18, 1904.

Trover by Anna E. Gerrish against the Muskegon Savings Bank. There was judgment for defendant on a verdict directed by the court, and plaintiff brings error. Affirmed.

*Turner & Turner,* for appellant.

*William Carpenter,* for appellee.

MOORE, C. J.   This is an action of trover to recover
the value of a quantity of jewelry and coins which were
left with the defendant bank by the husband of the plain-
tiff and placed in its vault.   Upon the close of the testi-
mony the trial judge directed a verdict in favor of defend-
ant.   The case is brought here by writ of error.

The plaintiff was a depositor in defendant bank.   Her
husband was also a depositor.   In addition to that, he
hired from the bank a deposit box, which was kept in the
vault of the bank, for the use of which he paid $3.50 a
year.   His version of what occurred when he left the
package at the bank is as follows:   He first narrated see-
ing his wife put the jewelry and coins into a package, and
taking it to the bank.

"I went into one of the little closets or coops they have
at the bank, and got my deposit box from Mr. Rece.   I
tried to get that package in my box.   It wouldn't go with
the other papers that I had there.   I locked my deposit
box, returned it to Mr. Rece, took this package around to
Mr. Hammond, told him the circumstances.   Mr. Ham-
mond is the cashier of the bank.   That was about the 9th
of September, 1901.   I told him the circumstances—that
I couldn't get it in my deposit box.   Asked him would it be
necessary for me to rent another deposit box or could he
put that away for me?   His reply was, 'No, I will put
that away safely for you, and be glad to do it.'   *   *   *
The next time I saw the package I should think was the
last of October.   I had been out of the city—myself and
family.   I got it from Mr. Rece.   Mr. Rece is a clerk at the
bank.   I got this package from him.   I took it home to
Mrs. Gerrish.   *   *   *   I took it back to the bank be-
cause we were going away again, to leave the city, going
some distance away.   I delivered it to Mr. Rece during
banking hours.   He was there, attending to his duties in
the bank.   I had some conversation with him at that time.
I says—I guess I called him Walter—I says, 'Walter,
will it be necessary for me to go through the formality of
seeing Mr. Hammond again about this box?'   He replied,

'No;' he would take care of it for me.   He put it in the vault, I suppose.   I don't know."

On the cross-examination he testified :

" I first hired a deposit box in 1898 in this bank.   I had one at that time, I think, and for that I paid the bank $3.50 a year—for the use of the box, the privilege of using the box.   At the time I took this package there, the box wasn't filled.   I had my private papers in it.   I filled it so full that I couldn't get this package inside it.   The question I asked was whether I would have to rent another box.   Of course, if I rented another box, I expected to pay for that box, and the question was with me whether I would be allowed to leave this package in the vault without paying for another box to put it in, and I wanted to know whether Mr. Hammond would allow me to leave this package in the vault without paying for the privilege, and he told me that he would, or that I could.   This was the first time, in September, and I was going away from home.   I lived here in the city.   Had a home of my own.   It was furnished by me, occupied by me and my family.   I was going to close it up—lock it up—and go away.   I left the furniture and some of the fixtures there in the house, and I wanted to leave this package in the bank while I was away.   *   *   *   The reason I didn't put it in the safety deposit box is because there wasn't room in that box for it with the other papers.   Leaving what I had in there, there wasn't room for this package.   When I left it with them I expected it would receive the same measure of protection that my box would receive, and no more.   I expected it would be put in the vault the same as any other package would be put in the vault.   I did not expect that they would give any more care to this package than they would give to anything else placed in the vault, and I was willing to rely upon the safety that its being left in the vault would give to it while I was away, and I preferred to rely upon that than to rely upon leaving it in my own home with my other goods.   Later on I sent for my safety deposit box."

This was the most favorable testimony for the plaintiff offered on her behalf.   The testimony shows the box was put into the vault of the bank.   During the winter burglars broke into the vault through its floor, which was made

of iron rails, with brick arches between; some portions of the floor having but one thickness of brick four inches wide: It is the claim of plaintiff that the bank was negligent in leaving this package in a vault constructed as this one was, or at least it was a question for the jury. We quote from the brief of counsel:

" It may have been that this jury would have said, if it had been left to them, that this defendant was negligent in putting a special deposit that they knew contained jewels and gold coin into such a vault, and that by so doing they did not use the diligence that the law requires, or that an ordinarily prudent man would use."

The record shows that in the vault the bank had a burglar-proof safe, in which its money and commercial paper of its own and that sent for collection was kept. The safe was not large. The mortgages, some money, books, and packages belonging to the bank, as well as the deposit boxes, were left in the vault. At the time of the burglary there were in the vault boxes belonging to the president of the bank, its vice-president, the cashier, and teller, and others. The burglars took the boxes of the cashier and teller. There was no claim made by the bank to the public that the vault was burglar-proof. When the whole of the testimony of Mr. Gerrish is read, it is made clear that when he found the package would not go in his deposit box he left it with Mr. Hammond, expecting it would be placed where it was placed, and that it would receive precisely the treatment it did receive. He did not expect to pay anything because the package was left with the bank, and the bank did not expect to make any charge for such care as it might give the package. The facts establish a clear case of gratuitous bailment. And no such degree of negligence was shown on the part of the bank as to make a case for the jury. See 3 Am. & Eng. Enc. Law (2d Ed.), p. 749; *Keen* v. *Beckman,* 66 Iowa, 672; *Carlyon* v. *Fitzhenry,* 2 Ariz. 266; *Whitney* v. *First National Bank,* 55 Vt. 154; *Davis* v. *Gay,* 141 Mass.

531; *Scott* v. *National Bank*, 72 Pa. St. 471; Story on Bailments (9th Ed.), § 23; *Knights* v. *Piella*, 111 Mich. 9; *Marshall* v. *Railroad Co.*, 126 Mich. 45.

Judgment is affirmed.

The other Justices concurred.