OWOSSO MASONIC TEMPLE ASS'N v. STATE
SAVINGS BANK.

SAME v. CITIZENS' SAVINGS BANK.

1. BANKS AND BANKING—GENERAL DEPOSITS.

A general deposit establishes relation of debtor and creditor
between bank and depositor, is repayable on demand in whole
or in part, consists of money which is mingled with that of
other depositors in fund chargeable with payment of general
deposits, possesses no trust quality, loses its special identity in
the general commingling and passes title to money so deposited
to the bank.

2. SAME—SPECIAL DEPOSITS.

A special deposit establishes the relation of bailor and bailee be-
tween bank and depositor, is made for safekeeping and is re-
payable in identical money, gives bank no right to handle or
use the money and does not pass title thereto to bank which
is liable only for negligence in case of loss.

3. SAME—DEPOSIT OF TRUST MONEY.

Trust money, not deposited as special deposit in bank but in a
general deposit, loses its identity as trust money, bank acquires
title thereto and becomes debtor therefor.

4. SAME—DEPOSITS—INTENT—PRESUMPTIONS.

A deposit will not be regarded as special unless made for a
special purpose, and with the intent it shall be held and used
exclusively for that purpose and not mingled with the other
funds in the bank; the presumption being that such deposit is
general in absence of evidence to the contrary.

5. SAME—DEPOSITS—FRATERNAL ORGANIZATION BUILDING FUND—
TRUSTS—INTEREST.

Deposits of money in banks which did not agree to treat them as
special deposits, nor set aside such moneys for a special pur-
pose and refrain from commingling them with other funds of

the bank *held,* general deposits and not entitled to preferential treatment, where banks were not parties to agreement between fraternal organization and its building fund's self-perpetuating trust committee, members of which were required to be members of the organization as well as certain officers of banks in which money was required to be deposited by trust agreement and refinancing plan contemplated that interest was to be paid on such deposits.

Appeal from Shiawassee; Collins (Joseph H.), J. Submitted October 29, 1935. (Docket No. 39, Calendar No. 38,568.) Decided December 10, 1935.

Separate actions of assumpsit by the Owosso Masonic Temple Association, a Michigan corporation, against The State Savings Bank and C. R. McLaughlin, its conservator, and the Citizens' Savings Bank and Frank C. Freeman, its conservator, to recover sums on deposit. Consolidated for trial and appeal. Judgments for plaintiff. Defendants appeal. Reversed.

*Leon F. Miner* and *Arthur E. Pierpont,* for plaintiff.

*Seth Q. Pulver,* for defendants.

POTTER, C. J. A Masonic temple was built in Owosso and mortgaged to the Grand Rapids Trust Company for $40,000. There were unpaid bills aggregating approximately $5,000. The owners of the temple desired to install an elevator therein. A Masonic Temple Association was formed, and in 1929 conducted an intensive campaign to clear the Masonic temple of indebtedness. Members of the several Masonic fraternities were asked to subscribe for bonds of the par value of $200 each, payable at

the death of the owner, at $185, with 10 per cent. discount on all installments paid when due. The plan provided the money raised should be deposited equally in the three Owosso banks. Four per cent. interest was to be paid upon the deposits. It was contemplated this interest would amount to $34,151.71 at the end of 30 years, and this fund to be derived from interest, together with other contributions from the Masonic Temple Association and otherwise, would be sufficient to retire the bonds. This fund when raised was to be under the control of three trustees, each of whom was a member of the board of directors of one of the Owosso banks.

These moneys so raised were deposited in part in the State Savings Bank, under the name ''Masonic Temple Building Trustee Fund;'' and in part in the Citizens' Savings Bank, under the name ''Masonic Temple Building Fund.'' These accounts could be checked against by the Masonic Temple Association by its president and secretary, and were in some cases checked against.

The question is whether, under the particular circumstances, the funds deposited in the banks above named were trust funds entitled to preference over other general deposits.

Plaintiff relies upon the contracts entered into between the Masonic Temple Association and the trustees of this fund, as follows:

''This agreement made and entered into this 24th day of September, A. D. 1929, by and between William A. Rosenkrans, Worthy S. Cooper and Oliver L. Davis, each of Owosso, Michigan, in their capacity as trustees, as hereinafter described, and to be known as the trust committee, parties of the first part, and the Masonic Temple Association, of

Owosso, Michigan, a Michigan corporation, parties of the second part, witnesseth as follows:

"This agreement is made for the purpose of creating the aforesaid trust committee to undertake the custody and safeguarding of a trust fund created and to be maintained by the said Masonic Temple Association, and to be used only for the retirement of what is known as ownership bonds sold to the members of Masonic bodies and other residents of Owosso, Michigan, for the purpose of liquidating an existing bonded indebtedness upon the parties of said Masonic Temple Association in Owosso, Michigan; making necessary additions and repairs to said property, the plan of which is hereto attached and known as Memorandum No. 1.

"The trust committee above referred to shall at all times be composed of three members, which shall include one representative from each of the three banks of the city of Owosso, Michigan, namely, the Owosso Savings Bank, the Citizens' Savings Bank, and the State Savings Bank. Such trust committee shall be a self-perpetuating committee. All resignations by members of the board shall be addressed to the committee itself to be accepted by the remaining members, and upon removal of any members of said committee for any cause, the remainder of the committee shall be empowered to appoint the successors, but under the limitations, hereafter imposed. Each member of the committee shall not only be a representative of the banks, as aforesaid, but shall be either the cashier, or a member of the board of directors of such banks, and shall at all times be a member of Owosso Lodge No. 81, F. & A. M., Owosso, Michigan.

"It shall be the duty of said trust committee to receive from the Owosso Masonic Temple Association all funds created and set aside for the retirement of ownership bonds outstanding, a complete list of which will at all times be furnished by the Owosso

Masonic Temple Association, together with any and all other funds intrusted to said trustees, by the Owosso Masonic Temple Association.

"All funds coming into possession of said trustees and being the property of said Owosso Masonic Temple Association, shall be equally deposited at all times with the three banks of Owosso, Michigan, above named.

"Said trust committee shall also pay out on voucher signed by the president and secretary of the said Masonic Temple Association to holders or beneficiaries of said ownership bonds such amounts as shall become due thereon.

"For the period of three years from and after this date, the said trustees will, through their respective banks, act as agents for the Masonic Temple Association in the collection of money due to said Masonic Temple Association from the sale of the issue of said ownerships bonds, each purchaser being given the opportunity to designate his preference as to place of payment.

"In consideration of the above agreement, the Owosso Masonic Temple Association agrees to furnish to the trustees a resolution passed by the affiliated bodies of the Masonic Temple Association, agreeing to pay to the association certain sums of money each year, the aggregate amount being $2,400, to be added to the trust fund.

"The Masonic Temple Association further agrees to execute contemporaneously herewith a trust mortgage in favor of the said trust committee to secure the payment of said bonds.

"Each bank of Owosso, Michigan, shall receive only the subscription cards for bonds of such persons as have expressed their preference for such bank.

"Between the 20th and 30th day of each month, each trustee shall give to the said Masonic Temple Association a list of names of such subscribers as

have failed to make their payments when due, in order to facilitate the collection of subscriptions.

"In witness whereof, we have hereunto set our hands and seals the day and year first above written.

"The Masonic Temple Association,
"By RAY W. HALL, President, and
"LEON F. MINER, Secretary.
"WILLIAM A. ROSENKRANS,
"WORTHY S. COOPER,
"OLIVER L. DAVIS,
"Trustees.

"In presence of:
"GLENN E. PERKINS,
"ROSE SASEK."

---

"This agreement, made this 24th day of September, A. D. 1929, by and between W. A. Rosenkrans, Worthy S. Cooper and Oliver Davis, trustees, or their successors in trust, of the city of Owosso, Shiawassee county, and State of Michigan, parties of the first part, and the Owosso Masonic Temple Association, a corporation, organized and doing business under the laws of the State of Michigan, party of the second part.

"Witnesseth as follows:

"Whereas, said Owosso Masonic Temple Association has recently carried on in the city of Owosso, a campaign for the purpose of raising funds to discharge the indebtedness of said association and to pay for certain additional improvements and equipment needed in the Masonic Temple of Owosso. Whereas, as a part of such campaign the said Owosso Masonic Temple has entered into a trust agreement with W. A. Rosenkrans, Worthy S. Cooper and Oliver S. Davis, being the parties of the first part hereto, a copy of such trust agreement is attached to and made a part of this agreement, and under and by virtue of such agreement said second

party has this day conveyed by warranty deed real estate known and described as lot 12, block 12 of the original plat of the village (now city) of Owosso, Shiawassee county, Michigan, same being the property known as the Masonic Temple of Owosso.

"And, whereas, said Owosso Masonic Temple Association has issued to persons, who subscribed to the fund above described, bonds payable upon the death of the subscriber, and whereas, it is the desire of the said Owosso Masonic Temple Association to protect the holders of such bonds and to carry out the terms and conditions of the same and for that purpose said deed above described and this agreement is entered into.

"Said second party agrees to pay over to said first parties or their successors in trust, the sum of at least $2,400 per year so long as there remains outstanding sufficient number of said bonds to more than equal in value the funds and available money in the hands of such trustees.

"The said trustees agree that in receiving said payment above stated or in receiving payment of said bonds or subscriptions that the moneys so received shall be used only for the purposes set forth in the schedule made by said Masonic Temple Association at the time of the sale of such bonds.

"It is further agreed between the parties hereto that said second party shall pay all taxes ordinary or extraordinary whatever assessed against said premises and shall keep said building insured in an amount satisfactory to said trustees; and shall occupy the same and may sublet same as it sees fit. That said $2,400 shall be paid by said second party to first parties on January 1st and July 1st, of each year in equal installments; that if said second party shall fail at any time to pay said moneys to first parties as aforesaid and shall remain in default for a period of 30 days or more, or should second party fail to pay the taxes or insurance upon said premises

and should the same remain unpaid for 30 days after the same becomes due and payable, then and in such case, first parties shall have the election of declaring this contract null and void and take possession of said premises and collect the rentals due or unpaid from the constituent Masonic bodies in said premises. And, for that purpose said second party does hereby sell, assign and set over unto first party the rentals due or to become due for the use of said building from any of the occupants in the sum of not less than $2,400 in any one year, or in case of said default as aforesaid first parties may foreclose the interest of second party in and to said property, take possession of said property and hold the same for the benefit of said bondholders, or may sell the same at public auction or private sale as they deem best, and the proceeds from such sale after deducting the expenses to be used for the purpose of establishing a trust fund for the bondholders.

"It is further agreed between the parties hereto that in case said second party performs each and every agreement by them to be performed in this contract and in such trust agreement, and upon the performance of the same said first parties agree to reconvey said premises to second party and then and in such case this contract shall be null and void.

"In witness whereof, said first parties as trustees have hereto set their hands and seals the day and year above written.

> "W. A. ROSENKRANS,
> "WORTHY S. COOPER,
> "OLIVER L. DAVIS,
> "Owosso Masonic Temple Assoc.,
> > "RAY W. HALL, President,
> > "LEON F. MINER, Secretary."

Deposits in banks are ordinarily divided into general and special deposits. A general deposit creates the relation of debtor and creditor between the

bank and the depositor, and may be repaid on demand, in whole or in part, in current money. It consists of money which is mingled with the money of other depositors in a general fund chargeable with the payment of general deposits, possesses no trust quality, and loses its special identity in its general commingling with the funds of the bank. A special deposit of money is a deposit for safe keeping. It contemplates the return of the identical money deposited. The relation of bailor and bailee exists between the depositor and the bank. The bank has no right to handle or use the money constituting a special deposit. No relation of debtor and creditor exists between the depositor and the bank. In case of a general deposit, there is a depositor, not a bailor; a debtor, not a bailee; a creditor, not an owner. The title of the money constituting a special deposit does not pass to the bank. The title to the money constituting a general deposit does pass to the bank.

Where one receives money as a trustee and it is not placed in a special deposit in the bank but in a general deposit so its identity is lost, it becomes the bank's money and the bank becomes debtor for the amount. *Neely* v. *Rood*, 54 Mich. 134 (52 Am. Rep. 802).

A bank is held liable only for negligence in the case of the loss of a special deposit. *Gerrish* v. *Muskegon Savings Bank*, 138 Mich. 46 (4 Ann. Cas. 1083, 17 Am. Neg. Rep. 81).

In *Reichert* v. *Midland County Savings Bank*, 254 Mich. 551, the money was sent to the bank to be held by the bank in escrow and to be paid out as installments upon a working contract became due. The bank placed the money in certificates of deposit and held such certificates, delivering some of them to the contractor when payments became due upon the con-

tract. This was held to be a deposit for a special purpose and, under the facts, the parties being able to trace the funds, the deposit was treated as entitled to preference.

A deposit will not be regarded as special unless made for a special purpose and with the understanding it is to be set aside solely for that purpose and not mingled with the other funds of the bank. *Reichert* v. *American State Savings Bank,* 264 Mich. 366 (89 A. L. R. 1284); *Borgess Hospital* v. *Union Industrial Trust & Savings Bank,* 265 Mich. 156.

In order to justify the designation of an account as a special deposit, its special purpose must be shown as well as an intention upon the part of both parties that it be held and used exclusively for such special purpose. The presumption with reference to a bank deposit is that it is general in the absence of evidence to the contrary. *Borgess Hospital* v. *Union Industrial Trust & Savings Bank, supra.*

The defendant banks did not agree to treat the funds as special deposits, nor to set aside the moneys therein deposited for a special purpose and refrain from commingling them with the other funds of the bank. The contract of September 24, 1929, between the Masonic Temple Association and the trustees thereof provided:

"All funds coming into possession of said trustees and being the property of said Owosso Masonic Temple Association, shall be equally deposited at all times with the three banks of Owosso, Michigan, above named.

"Said trust committee shall also pay out on voucher signed by the president and secretary of the said Masonic Temple Association to holders or beneficiaries of said ownership bonds such amounts as shall become due thereon."

Neither of the banks was a party to any instrument providing these moneys were to be received as a special deposit. On the other hand, the contract contemplated the banks were to pay interest. If they did so, it was necessary for the banks to invest the moneys. They could not invest the moneys so deposited unless title thereto passed to them. There was a mutual understanding withdrawals could be made by the Masonic Temple Association as it saw fit just as if the accounts had not been specially named upon the books of the banks. Under the circumstances, the deposits in each of the banks were general deposits, not entitled to preferential treatment.

Judgments of the trial court reversed, with costs, without a new trial.

Toy, North, Fead, Wiest, Butzel, Bushnell, and Edward M. Sharpe, JJ., concurred.