**In re A & C CHEVROLET–OLDS, INC., d/b/a Goebel Motor Sales, Bankrupt.**

**Winn HEDGLIN, Plaintiff-Appellee,**

v.

**COMMUNITY BANK, KINDE, MICHIGAN, Defendant-Appellant.**

Civ. A. No. 79–10234.

United States District Court, E. D. Michigan, N. D.

March 21, 1980.

John T. Garey, Saginaw, Mich., for plaintiff-appellee.

Kittredge R. Klapp, Flint, Mich., for defendant-appellant.

## MEMORANDUM OPINION AND ORDER

JAMES HARVEY, District Judge.

This is an appeal from a decision of the Bankruptcy Court holding defendant Community Bank liable to plaintiff Trustee for $12,582.49. The Bankruptcy Court determined that this liability arose out of defendant Bank's wrongful set-off of funds due Bankrupt A & C Chevrolet-Olds, Inc. (hereinafter Bankrupt) from defendant Bank against personal loans of Clarke Cummings, president of Bankrupt, with defendant Bank.

Defendant asserts two reasons for reversal of the Bankruptcy Court's judgment. First, it alleges that the Bankruptcy Court failed to consider certain bookkeeping increases made to Bankrupt's account by defendant Bank as only provisional in nature and therefore subject to revocation by defendant Bank in the event of overdraft or dishonor pursuant to Article 4 of the UCC. Second, defendant Bank argues that § 68 of the Bankruptcy Act entitles it to set-off against any debt owing from the Bank to the Bankrupt, the debts owing from the Bankrupt to it.

On March 19, 1980, the Court heard oral arguments in this matter pursuant to Bankruptcy Rule 809.

This Court is required to accept the Bankruptcy Judge's findings of fact unless they are clearly erroneous. Bankruptcy Rule 810. The relevant facts as found by the lower court and adopted by this Court may be briefly summarized as follows:

1) On January 31, 1978 Bankrupt drew a check on its account with defendant Bank in the amount of $27,900.65 made payable to General Motors Acceptance Corporation (hereinafter GMAC).

2) On February 3, 1978, GMAC deposited the $27,900.65 check in its account with Second National Bank of Saginaw.

3) On February 3, 1978, Second National Bank forwarded the $27,900.65 check to the Federal Reserve Bank for collection and finally to defendant Community Bank.

4) On February 7, 1978, Community Bank received the $27,900.65 check for collection.

5) On February 8, 1978, defendant Community Bank notified Clarke Cummings, president of Bankrupt that Bankrupt's checking account with defendant Bank was overdrawn.

6) On February 8, 1978, Bankrupt deposited six checks totalling $26,029.76 with defendant Bank to cover the overdraft created by the GMAC check. One of the six checks was for $14,000.00 and was drawn on Bankrupt's checking account with the Port Austin Bank.

7) On February 9, 1978, defendant Bank returned the $27,900.65 check through collection channels and marked the check "uncollected funds."

8) On February 10, 1978, defendant Bank transferred $27,996.81 from the Bankrupt's checking account and placed it in a money order made payable to defendant Community Bank.

9) On February 10, 1978, after learning that defendant Bank had withdrawn funds from its account, Bankrupt stopped payment on the $14,000.00 check drawn on the Port Austin Bank and deposited with defendant Community Bank on February 8, 1978.

10) On February 14, 1978, Bankrupt filed its petition and was adjudicated a bankrupt.

11) On February 15, 1978, defendant Community Bank converted the $27,996.81 money order made payable to it into a $14,000.00 money order made payable to it and $13,996.81 cash. The $13,996.81 was applied by Community Bank to six loans. Five of these loans were from the defendant Bank to Cummings as an individual. $12,582.49 was applied to these five personal loans. $1,414.32 was applied to a loan from defendant Bank to the Bankrupt.

12) On February 16, 1978, the $14,000.00 check drawn on the Port Austin Bank was returned to Community Bank unpaid due to the stop payment order issued by Bankrupt and Community Bank cancelled the $14,-000.00 money order.

13) On February 27, 1978, Second National Bank protested the late return of the GMAC check for $27,900.65 by defendant Community Bank.

14) On February 28, 1978, the account of defendant Community Bank was debited in the amount of $27,900.65 by the Federal Reserve Bank.

15) On April 11, 1978, defendant Community Bank charged the account of Bankrupt $27,900.65.

To these facts, this Court adds the additional finding admitted by plaintiff Trustee in paragraph 5 of his complaint that: "On or about February 10, 1978, an agent of defendant Bank called the Port Austin State Bank and found out there were insufficient funds to satisfy check."

Defendant Bank argues that the Bankruptcy Court erroneously viewed the transfer of "funds" from the Bankrupt's checking account to outstanding loan accounts of Clarke Cummings as a transfer of funds owned by the Bankrupt instead of a shifting of provisional bookkeeping entries between accounts.

The Court notes that defendant Bank admits this transfer was wrongful under Section 70 of the Bankruptcy Act since it occurred after February 14, 1978, when the stay imposed by Bankruptcy Rule 601 is in effect. In addition, the Court finds the Bankruptcy Court was correct in holding that a shift of this nature would not be a set-off within the meaning of Section 68 of the Bankruptcy Act since the debts were not mutual. Clearly, to be "mutual" within Section 68, "the debits or credits must be in the same right and between the same parties, standing in the same capacity." *Collier on Bankruptcy*, Section 68.04(2.1), p. 867.

In view of this then, if the shift between the checking and loan account involved actual funds of the Bankrupt or represented an off-set of a debt owing to the Bankrupt from defendant Bank then the judgment of the Bankruptcy Court would be sustained.

However, an examination of the facts enumerated above, in light of the banking procedures provided for in Article 4 of the Uniform Commercial Code, convinces the Court that the argument of defendant Bank has merit.

M.C.L.A. § 440.4201 (U.C.C. § 4201) provides that the bookkeeping entries made by a bank increasing a depositor's account at the time a foreign item is sent for collection is a provisional entry. The practice of making this provisional settlement does not effect a Bank's right of charge-back or refund from its customers. M.C.L.A. § 440.-4212.

In the instant case, the bookkeeping increases to Bankrupt's checking account for the $14,000.00 Port Austin check and the $27,900.65 GMAC check which was returned to defendant Bank on February 7, 1978 were merely provisional entries.

The effect of a provisional entry is explained in the official comments to Section 4212 of the U.C.C. (M.C.L.A. § 440.4212) as follows:

"Purposes:

1. Under current bank practice, in a major portion of cases banks make provisional settlement for items when they are first received and then await subsequent determination of whether the item will be finally paid. This is the principal characteristic of what are referred to in banking parlance as "cash items". Statistically, this practice of settling provisionally first and then awaiting final payment is justified because more than ninety-nine per cent of such cash items are finally paid, with the result that in this great preponderance of cases it becomes unnecessary for the banks making the provisional settlements to make any further entries. In due course the provisional settlements become final simply with the lapse of time. However, in those cases where the item being collected is not finally paid or where for various reasons the bank making the provisional settlement does not itself receive final payment, under the American Bankers Association Bank Collection Code, under Federal Reserve Regulations and operating letters and under various types of agreements between banks and between customers and banks, provision is made for the reversal of the provisional credits and the right to obtain refund. Subsection (1) codifies and simplifies the statement of these rights."

With respect to the $14,000.00 check drawn on the Port Austin account, defendant Community Bank was a collecting bank. M.C.L.A. § 440.4105(d) (U.C.C. § 4105(d)), defines a collecting bank as any bank handling the item for collection except the payor bank.

As a collecting bank, any credit it gave Bankrupt's account when he deposited the $14,000.00 Port Austin check on February 8, 1978 was only a provisional settlement under M.C.L.A. § 440.4201 (U.C.C. § 4201). Since the Bankrupt stopped payment of the $14,000.00 on February 10, 1978, the Bank was entitled to charge back its provisional increase to the Bankrupt's account. This would leave only $12,029.79 out of the $26,-000.00 deposited by Bankrupt on February 8, 1978 to cover the returned $27,900.65 GMAC check.

Defendant Bank was the payor bank with respect to the $27,900.65 check payable to GMAC and drawn on Bankrupt's account with defendant Bank. The facts, as found by the Bankruptcy Court and adopted by this Court, indicate that on February 7, 1978, defendant Bank processed the $27,-900.65 check. The processing created a $25,107.86 overdraft in Bankrupt's account. Since defendant Bank failed to return the check to GMAC by midnight of the following day (February 8, 1978), it became liable to pay the check.

M.C.L.A. § 440.4213 determines that a check is paid by a payor bank when the bank has done any of the following, whichever happens first:

(d) made a provisional settlement for the item and failed to revoke the settlement in the time and manner permitted by statute, clearing house rule or agreement.

M.C.L.A. § 440.4302 makes a payor bank accountable for the amount of a demand item where it retains the item beyond midnight of the banking day of receipt without settling for it or, regardless of whether it is also the depositing bank, does not pay or return the item or send notice of dishonor until after its midnight deadline.

M.C.L.A. § 440.4212 (U.C.C. § 4212) gives a bank an unqualified right to revoke a provisional settlement until a settlement for the item becomes fixed. Since the GMAC check was paid by the bank on February 8, 1978, the settlement becomes final on that date. The Bank became unqualifiedly liable for the check on that date and the Bankrupt became unqualifiedly liable on the overdraft. M.C.L.A. § 440.4401, comment 1; Bankruptcy Court's opinion, page 4.

Defendant Bank argues that Section 68 of the Bankruptcy Act permits it to offset the amount of the GMAC overdraft against any funds which would be owing from the Bank to the Bankrupt.

In a recent court of appeals case, the Michigan approach to bank setoffs was summarized as follows:

". . . Funds which are generally deposited in a bank create a debtor-creditor relationship between the bank and the depositor. *Owosso Masonic Temple Association v. State Savings Bank*, 273 Mich. 682, 263 N.W. 771.

". . . *as is well understood, funds on general deposit* in a bank are the property of the bank, for which funds the bank is a debtor, and the bank cannot have a lien on its own property; the banker's lien does not, therefore, by the very nature of the transaction and by the further force of the customs and usages of the banking business, extend to general deposits, but rather, has generally been confined to securities and valuables which may be in the banker's custody. This right of a bank with respect to general deposits is more accurately a right of setoff, for it rests upon, and is coextensive with, the right to set off as to mutual demands. But whether the right of

the bank is called a lien or a right of setoff, so far as matured indebtedness of the bank is concerned, the practical effect is the same. The cross demands are satisfied so far as they are equal leaving whatever balance may be due on either as the true amount of the indebtedness from the one party to the other . . ." (*Guilds v. Monroe County Bank*, 41 Mich. App. 616, 200 N.W.2d 769 (1972) emphasis added).

Here, the $25,107.86 overdraft was never paid. The Bankrupt's deposit of $26,029.00 cannot be considered payment because $14,-000.00 of this deposit was represented by a bad check. This deposit only reduced the overdraft position to $13,078.86, accordingly, no indebtedness from the Bank to the Bankrupt existed at the time of bankruptcy or any time thereafter.

Although the deposits made by the bankrupt debtor were within four months of bankruptcy, such transactions have been held not to create a voidable preference within the meaning of Section 60 of the Bankruptcy Act, even though the result is that the bank fares better than other creditors of the Bankrupt not similarly situated. The general rule may be stated that where an insolvent depositor makes general deposits within four months of his bankruptcy, which deposits are accepted in good faith and in the regular course of business, the bank has a right to set off such deposits against any obligations owing to it by the depositor. *Collier on Bankruptcy*, Section 68.16, p. 918.

Under Section 70 of the Bankruptcy Act, the Trustee is entitled to the estate of the Bankrupt "as of the date of the filing of the petition initiating a proceeding under this act."

The foregoing discussion indicates that as of the date of filing, Bankrupt owed the Bank $13,903.84 after all permissible setoffs had been made to Bankrupt's account by the Bank.

The Court concludes, then, that plaintiff-trustee is not entitled to the $12,882.49 erro-

neously applied to the five loan accounts of Clarke Cummings after the adjudication of bankruptcy. That transfer represented only an internal bookkeeping transaction of the bank.

In applying the law to the facts as found by the Bankruptcy Court, the Court finds that as of the date of adjudication in bankruptcy, defendant Bank was not indebted to the Bankrupt's estate after exercising its proper right of set-off.

For the reasons stated above, the judgment of the Bankruptcy Court is REVERSED and the complaint against defendant Bank is DISMISSED.

IT IS SO ORDERED.