## HUFF v. FARWELL ET AL.

1. **Mortgage on Land:** SUBSEQUENT SALE OF THE LAND IN PARCELS: ORDER OF LIABILITY. Where land encumbered by mortgage is conveyed in parcels to different persons at different times, the parcels are chargeable with the mortgage debt *pro rata*, and not in the inverse order of their alienation.

2. ———: RELEASE OF LAND BY HOLDER, BUT NOT OF RECORD: PURCHASER OF MORTGAGE WITH NOTICE BOUND BY RELEASE: LIABILITY OF RELEASOR TO RELEASEE. Where the holder of a mortgage on land, for a valuable consideration paid by the owner of a portion of the land, agrees to release such portion from the operation of the mortgage, but such release is not made of record, a purchaser of the mortgage from such holder, with notice of such agreement, is bound thereby, and cannot afterwards enforce the mortgage against such portion of the land. And where such releasee was made a party to an action of foreclosure, brought by a purchaser of the mortgage from the releasor with notice of the release, and the releasee, instead of pleading his defense against the

plaintiff, set up a cross-bill for damages againt his co-defendant, the releasor, on account of his failure to enter the release of record, *held* that a judgment on such cross-bill could not be sustained, because the failure to enter the release of record did not, under the circumstances, work any damage to the releasee.

3. **Principal and Agent:** PRINCIPAL BOUND BY AGENT'S KNOWLEDGE: EXAMPLE. Where plaintiff purchased, through his agent, a note and mortgage, and the agent at the time knew that the holder of the mortgage had, for a valuable consideration, agreed to release a portion of the mortgaged premises from the operation of the mortgage, *held* that the principal was bound by his agent's knowledge, and took the mortgage subject to such agreement.

4. **Practice in Supreme Court:** TRIAL DE NOVO: EVIDENCE: ABSTRACT. It is not usually necessary or desirable that an abstract contain in fact all the evidence, in order to a trial *de novo*, but only such as is necessary to a proper understanding of the facts of the case; and when the abstract purports to contain all the evidence, it will be presumed to be true for the purposes of the case, except so far as additional evidence is set out by the appellee.

*Appeal from Bremer Circuit Court.*

FRIDAY, OCTOBER 23.

ACTION to foreclose a mortgage executed to the plaintiff by the defendant Farwell. The defendants Potter, Olds and Curtis were made parties as claiming to have an interest in the mortgaged property, acquired subsequently to the mortgage. The defendant Potter filed a cross-petition against Curtis, averring that Potter was the owner of the south half of the premises in question by purchase subsequent to the mortgage; that at one time Curtis was the owner of the mortgage by purchase from the plaintiff; that Curtis for a valuable consideration agreed with him (Potter) to release his half of the property; that he failed to do it, and sold and delivered the mortgage back to the plaintiff, and by breach of his agreement he will sustain damages in whatever he may be obliged to pay to discharge his property, and he prayed that he might have judgment against Curtis for such amount. The court rendered a decree of foreclosure in favor of the

plaintiff, charging one-half of the mortgage debt as a lien upon the north half of the premises owned by the defendant Olds, and the other half of the debt upon the south half owned by the defendant Potter, and rendering judgment in favor of Potter against Curtis as prayed in Potter's cross-petition. The defendant Curtis appeals.

*E. L. Smalley* and *Horace Boies*, for appellants.

*H. H. Gray* and *Gibson & Dawson*, for appellee.

ADAMS, J.—The undisputed facts appear to be that the defendant Farwell was the owner, at one time, of lots 2 and 3, in fractional block 6, in the city of Waverly; that while he was such owner he undertook to execute a mortgage upon them to the plaintiff, and gave the mortgage now sought to be foreclosed; that by mistake the property was not well described, and there is some doubt as to whether the description is sufficient to cover the property; that after the execution of the mortgage he sold the south half to one Francis Williams, and he, Williams, sold it to one Miss Sophia Williams, and she sold it to the defendant Potter, and all had knowledge of the mortgage, and the intention of Farwell to make the same cover the property in question; that after Farwell sold the south half he sold the north half to one Mrs. Billings; that at the time Potter bought he paid the full purchase price, notwithstanding he had knowledge of the existence of the mortgage, relying, probably, in part upon the covenant of warranty in his deeds from Miss Williams, and in part upon another matter out of which this controversy has arisen. He seems to have conceived the idea, for some reason, that if he could acquire the plaintiff's mortgage he could enforce it wholly against the north half, owned by Mrs. Billings, and he entered into negotiations for such purpose. The defendant Curtis was, at the same time, a judgment creditor of Farwell, and he seems to have conceived the idea that if he could acquire the mortgage he could aid himself in some way

in the collection of his judgment, and he entered into negotiations for the purchase of the mortgage. Potter claims that he himself succeeded in effecting a purchase of it, though the mortgage was not delivered to him, and that he relinquished his right to Curtis, who, in consideration thereof, was to release the south half. It is undisputed that Curtis agreed, at least with the plaintiff's agent, that, if he was allowed to acquire the mortgage, and did acquire it, he would release to Potter the south half, and look to the north half alone, owned by Mrs. Billings. Upon what ground either he or Potter arrived at the conclusion that the whole mortgage could be enforced against Mrs. Billings' half does not appear. It is true that the south half was sold first, and in some states it has been held that, where mortgaged property is sold in parcels at different times to different persons, the parcels, upon foreclosure, are liable in the inverse order of alienation. But such has never been the rule in this state. On the other hand, it is well settled that the parcels are chargeable *pro rata*. The earliest decision upon the point is *Bates v. Ruddick*, 2 Iowa, 425. Potter seems to have based his idea upon something which he claims that Mrs. Billings' husband said to him about it. But there is nothing which he could say that would bind Mrs. Billings, so far as the evidence shows.

1. MORTGAGE on land: subsequent sale of the land in parcels: order of liability.

But it is not important to inquire how Potter or Curtis came to make such mistake. Curtis soon discovered that Mrs. Billings' half was not primarily liable for the whole debt, and that he could not acquire the mortgage and release the south half without discharging a *pro rata* part of the mortgage debt, so far as the enforcement of the debt was concerned, against the mortgaged property. He had gone so far as to take an assignment of the mortgage and give his check therefor, but he says he had not actually bought the mortgage, but was to have an opportunity to see what he could do with it, and was to be allowed to return it and

receive back his check, if he found that he could not use the mortgage in the way he had planned; and he did return it and receive back his check. As to whether the title to the mortgage actually passed to Curtis, the evidence is such as to leave our minds in some doubt. But we do not find it necessary to determine such question. If the title to the mortgage never actually passed to Curtis, he never had any power to release the mortgage, and in such case it is not claimed that he would be liable for his failure to release it. On the other hand, if the title did pass, and Curtis, for a valuable consideration received from Potter, had agreed to release Potter's land, then there was, as between Potter and Curtis, an equitable release, and the land, as between them, stood virtually discharged. Equity considers as done that which ought to be done. It would not be claimed for a moment by Potter, if that took place which he claims did take place, that Curtis, if he had retained the mortgage and had sought to foreclose the same as against Potter's half, could have had a decree to that effect. A release of record would have been of no importance. That, at best, would have been mere evidence of a discharge which in equity had already taken place. Now, when the plaintiff bought back the mortgage and the mortgage debt, if he did so, he could not properly claim to have the lien restored unless he had an equity superior to Potter's. But he could not have a superior equity if he had knowledge of Potter's equity. If he knew that Potter's land had for a valuable consideration been released by Curtis, while owner of the mortgage, he bought the mortgage with such land released.

As to the plaintiff's knowledge, it is sufficient to say that it is undisputed that his agent, who sold the mortgage to Curtis, if it was sold, and bought it back, if it was bought back, had been the negotiator between Curtis and Potter, and knew everything that had been done in the premises. His knowl-

edge, under the circumstances shown, was the plaintiff's knowledge. Potter, then, upon his own theory, had a complete defense to the mortgage, and might have set it up by pleading as an answer to the plaintiff what he pleaded in a cross-petition against Curtis, and ended this whole trouble. His whole claim for damages against Curtis is based upon the fact that Curtis failed to make an entry of record showing the agreed release. But, under his theory of the evidence, such release of record, if it had been made, would not have added anything to the strength of the defense which he had and might have made. His defense being perfect without the release of record, he was not damaged because Curtis had failed to make it.

Potter contends that the case is not triable *de novo* because the abstract does not contain all the evidence. But the abstract purports to contain all the evidence; and, where such is the case, we assume that it is true, except so far as additional evidence is set out by the appellee. It is not usually necessary or desirable that an abstract should in fact contain all the evidence, for reasons which must be apparent to every lawyer. It is possible, of course, that, under our rule, an improper burden might be imposed upon the appellee, but practically this seldom happens, and it would be impossible to adopt the rule contended for without throwing upon this court an amount of work which it could not perform. In rendering judgment against Curtis, we think that the court erred.

