MERCHANTS BANK OF VANDERVOORT *v.* AFFHOLTER.

Opinion delivered November 17, 1919.

1. PRINCIPAL AND AGENT—PURCHASE OF LIBERTY BONDS—PROCUREMENT OF WRONG SORT.—Appellee subscribed for liberty bonds of the fourth issue, and on his subscription card provided that they were to be registered bonds; this card was given to the appellant bank. Appellee then deposited with the bank the purchase price of the bonds. Appellant then procured coupon bonds, but upon delivery to appellee, they were stolen. *Held* under the facts that appellant bank was liable to appellee for the amount deposited by appellee to pay for the bonds.

2. SAME—RELATION OF BANK AND PURCHASER OF BONDS.—The bank having accepted funds for the purchase of bonds, it was responsible to the subscriber, either for the return of the money or for the delivery of bonds designated in the subscription contract.

3. SAME—DEPOSIT OF COUPON BOND FOR SAFE KEEPING—THEFT—LIABILITY OF BANK.—Appellee deposited with appellant bank, a coupon liberty bond, payable to bearer, for safe keeping. The bank placed the bond, with others, including some owned by it, in an iron safe, but not in a burglar-proof part of that safe. The iron safe was blown open, and appellee's bond stolen. In an action by appellee against the bank for the value of the bond, *held*, that as between the parties appellant was a gratuitous bailee, and was liable only for gross negligence, and *held*, further, it was a jury question whether appellant was grossly negligent in not placing a bond of that character in its burglar-proof compartment.

4. JURISDICTION—TEST OF—AMOUNT—FRAUD.—The test of jurisdiction is found in the allegations of the complaint, and if those allegations are made merely for the purpose of giving jurisdiction in fraud of the rights of the parties, it may be reached by special plea setting up the fraud.

5. NEGLIGENCE—BAILMENT—LOSS OF RES—JURISDICTIONAL AMOUNT SUED FOR.—In an action in the circuit court, the complaint alleged that appellee had given a liberty bond of the value of $100, and $2 accrued interest, to appellant for safe keeping, and that the same was stolen as a result of appellant's negligence. *Held,* the complaint brought the cause within the jurisdiction of the circuit court, notwithstanding that in its verdict the jury found the bond to be of less value than $100; and in the absence of proof tending to show fraud upon the jurisdiction of the court, an objection to the complaint should not be sustained.

Appeal from Polk Circuit Court; *James S. Steel,* Judge; affirmed.

*Prickett & Pipkin,* for appellant.

1. The court erred in instruction No. 1 for plaintiff in assuming that defendant became the agent of appellee with specific instructions and ignores material issues about which the evidence was conflicting and was misleading and prejudicial. 95 Ark. 108; 93 *Id.* 564. Instruction No. 2 ignores appellant's contentions and theory.

2. There was also error in the admission of Mrs. Secklyter's evidence and that of appellee's wife and others as pointed out in the motion for a new trial. 33 Am. Rep. 767. Cases *supra.*

*Lake & Lake,* for appellee.

1. There was no error in the instructions given or refused. 69 Ark. 632; 89 *Id.* 178; 95 *Id.* 178; 95 *Id.* 506; 93 *Id.* 140; *Ib.* 457. See also 59 Ark. 431; 99 *Id.* 926; 93 589; 23 *Id.* 115; *Ib.* 519; 111 *Id.* 550; 1 U. S. (Law Ed.) 878; 2 C. J. 717.

2. There was no error in the admission of evidence and on the whole case the verdict was right and sustained by ample testimony.

*Prickett & Pipkin,* for appallant.

1. In addition to points and authorities in first brief, contend that the instructions were error. 33 Am. Rep. 767.

2. The demurrer to appellee's second cause should have been sustained. 7 R. C. L., § 88; 61 Ark. 564. For numerous errors in the instructions and ignoring material issues the judgment should be reversed.

McCULLOCH, C. J.   A. B. Affholter and his wife, Leni Affholter, instituted separate actions in the circuit court of Polk County against appellant, a banking corporation doing business at Vandervoort, in that county. to recover sums of money deposited with appellant for the purchase of United States Government bonds of the Fourth or Liberty Loan issue.   The complaint of Mrs. Affholter sought recovery on another item which will be discussed separately, but on the issue referred to above the cases were identical and will be disposed of together in this opinion.

Affholter and his wife each subscribed for the purchase of bonds in the sum of $150, and the subscriptions were given through a canvasser or solicitor who procured their signatures and deposited their subscription cards with appellant bank.   Each of the cards signed by appellees, Affholter and wife, contained an agreement to take a bond of the denomination of $100 and one of the denomination of $50, making a total of $150, and registered bonds were designated in the subscription cards as the kind to be purchased.   The cards contained printed directions designating two kinds of bonds, one registered bonds and the other coupon bonds, and the word "coupon" had a line drawn through it, leaving the designation of registered bonds as the kind selected by the appellees.

The following day after the subscriptions were taken, Mrs. Affholter called at the bank and deposited sufficient funds to cover the subscriptions of herself and husband and received from the bank a deposit slip reciting the names of the depositors, the amount deposited, the date thereof, and the words "deposited by Fourth Liberty Loan."   The bonds were ordered by the bank and received, but before they were called for by said

purchasers the bank vaults were robbed in the night time and the bonds were stolen. This occurred on November 13, 1918, three or four days after the bonds had been received by the bank. The bonds ordered and received by the bank were coupon bonds and not registered bonds, and the theory upon which appellees sought to recover the money from the bank was that they subscribed for registered bonds and deposited the funds to cover the purchase price of that kind of bonds, but that the bank failed to carry out the instructions, and that the coupon bonds received by the bank in violation of the instructions did not become the property of appellees.

On the other hand, the contention of appellants in the trial below was that the subscription cards were not delivered to the officials of the bank for the purpose of designating the character of bonds to be ordered, but were merely left at the bank for safe-keeping for the sales director of the Liberty Loan drive, and that no directions were given to the officials of the bank by appellees as to the kind of bonds to be ordered, and that the coupon bonds were ordered pursuant to the practice there for subscribers to accept coupon bonds.

(1) That was the issue presented in the trial below, and the court submitted it to the jury on instructions which stated, in substance, that if appellees deposited the money with instructions to appellant to purchase registered bonds and appellant failed to procure that character of bonds, it was liable for the money so deposited. The evidence was the same in each case and was sufficient to sustain the findings in favor of appellees. The printed subscription cards contained an agreement on the part of the subscriber to call at the bank at once and pay the subscription, and it also designated the character of bonds to be purchased. The cashier testified that the subscription cards were not delivered to the officers of the bank for the purpose of giving directions concerning the furnishing of bonds, but were merely kept there for the benefit of the sales director. There were, however, no other directions given concerning the kinds of bonds

to be purchased, and the jury were warranted in finding that the officers of the bank knew, or ought to have known, that the character of bonds desired was designated on the face of the subscription cards. That being true, it was the duty of the bank to take notice of the designation and order the character of bonds so designated. Failure to follow the instructions in that respect made the bank responsible for the return of the money in the event the designated bonds were not delivered to the subscribers.

(2) Error of the court is assigned in giving an instruction which it is said assumed the existence of the relation of agency between the bank and appellees in the purchase of the bonds, but we do not think that the instruction assumed the existence of that relation. If it did, however, there was no error, for it was undisputed that the money was deposited with the bank for the purpose of purchasing bonds. It is unimportant whether the bank was acting strictly as the agent of the subscriber or whether it was acting as a promoter of the loan drive, for, if it accepted funds for the purchase of bonds, it was responsible to the subscriber either for the return of the money or for the delivery of bonds designated in the subscription contract.

There was no error of the court in the submission of the issues to the jury, nor was there any other prejudicial error occurring at the trial.

The other branch of the suit instituted by Mrs. Affholter involved the question of liability for a coupon bond of the denomination of $100, delivered by her to the bank for safe-keeping. She purchased the bond, and afterwards delivered the same to the bank for safe-keeping, and it was placed in the bank safe, which was burglarized on the night of November 13, 1918, and that bond, together with many others belonging to other persons, was stolen. The bank kept a large iron safe with a combination lock on it and inside of it was a manganese steel drawer or compartment which was burglar-proof, and was used for the safe-keeping of money. The bonds —the one belonging to Mrs. Affholter and those belong-

ing to numerous other persons, including officials of the bank—were not kept in the burglar-proof compartment, but were kept inside of the safe. The burglary was discovered the next morning after it occurred, and on examination it was found that the combination lock on the outside of the safe had been chopped off with an axe and that explosive material had been inserted inside the lining of the door, which, when exploded, blew off the door or lock and permitted entrance. The money drawer or compartment was not entered. The testimony introduced by appellant was to the effect that all the bonds kept by the bank, including those which were the property of the bank itself and its officials, were kept in the same manner, and that that was the customary way to keep the bonds. There was also testimony to the effect that there was not room inside the money drawer to keep the bonds.

(3)    It is earnestly insisted that there is no evidence to sustain the finding of negligence on the part of the bank for the loss of the bonds. We are of the opinion, however, that the evidence was legally sufficient. These bonds were coupon bonds, payable to bearer, and negligence is inferable from the fact that they were kept, not in the burglar-proof compartment of the safe, but in the part of the safe which was insufficient to resist the attack of a skillful burglar. Appellant was, with respect to the keeping of this particular bond for Mrs. Affholter, a gratuitous bailee and was liable only for gross negligence. *Wear* v. *Gleason,* 52 Ark. 364; *Baker* v. *Bailey,* 103 Ark. 12. But it was a question for the jury to determine whether or not under the circumstances it did not constitute gross negligence to keep in an insecure place Government bonds, payable to bearer, which could not be readily identified. We can not say that the jury were not warranted in drawing the inference of gross negligence from the circumstances in the case. The court submitted this feature of the case to the jury on instructions which permitted recovery on the finding by the jury of failure of appellant to exercise ordinary care,

but the same kind of instructions were requested and given at the instance of counsel for appellant, and it is unnecessary for us to determine whether or not those instructions were correct. We have examined the instructions carefully and do not find anything prejudicial to appellant's rights.

(4-5). Another point made in the case is that the second paragraph of Mrs. Affholter's complaint, seeking recovery for the loss of the single bond of the denomination of $100, did not state a cause of action within the jurisdiction of the circuit court, or rather that it constituted a fraud on the jurisdiction of the court in that the bond was not of the value of $100. There was a demurrer to the second paragraph, which the court overruled.

The test of jurisdiction must be found in the allegations of the complaint, but if those allegations are made merely for the purpose of giving jurisdiction in fraud of the rights of the parties, it may be reached by a special plea setting up the fraud. *Neale* v. *Smith,* 61 Ark. 564. There was no effort to show fraud in the conduct of the plaintiff in joining this cause of action with the other and in instituting the action in the circuit court. The allegation of the complaint was that the lost bond was of the denomination of $100 and that with accrued interest it was of the value of $102. This was sufficient to come within the jurisdiction of the circuit court, and, notwithstanding the fact that the jury found the value of the bond to be less than $100, in the absence of proof tending to show fraud upon the jurisdiction of the court, an objection to the complaint should not have been sustained.

We find no error in either of the judgments, and the same are, therefore, affirmed.