WILLIAM KUBLI, Appellant, v. FIRST NATIONAL BANK OF PLEAS-
ANTVILLE, Appellee.

**APPEAL AND ERROR:** Abstracts of Record—Denial Revealing Imma-
1  terial Omission. A denial that appellant's abstract contains all the evidence will be disregarded when the denial simply reveals the fact that appellant has omitted from his abstract certain testimony which is *wholly immaterial* to the question presented on appeal.

**BAILMENT:** Banker as Gratuitous Bailee. A banker who, as a
2  *gratuitous* bailee, receives from another bonds for safe-keeping, must exercise that degree of care thereover which prudent business men ordinarily exercise over like property under like circumstances. *Such care must not be less than that which the bailee habitually employs over his own property of the same kind.*

**BAILMENT:** Evidence. In an action against a bank for the loss of
3  bonds held for safe-keeping, an advertised written offer by the bank to receive bonds for safe-keeping is admissible as bearing on the general course of business of the bank.

*Appeal from Marion District Court.*—H. S. DUGAN, Judge.

FEBRUARY 8, 1922.

REHEARING DENIED MAY 8, 1922.

ACTION at law, to recover from defendant a sum of money alleged to have been paid to or deposited with defendant for the purchase of Liberty Bonds, or to recover the value of the bonds which defendant undertook to purchase on plaintiff's account. The material facts are stated in the opinion. There was a trial to a jury, at the close of which verdict was directed and judgment entered in favor of defendant, and plaintiff appeals.—*Reversed.*

*W. H. Lyon* and *R. J. Bannister*, for appellant.

*Vander Ploeg & Johnson*, for appellee.

WEAVER, J.—The petition states that, in the years 1918 and 1919, plaintiff subscribed and paid to the defendant bank the sum of $1,711.25 for Liberty Bonds of the United States of the face value of $1,700. It is further alleged that since said payment or deposit plaintiff has demanded from defendant a delivery of the bonds so subscribed for, or a return of the money paid for that purpose; but that defendant has failed and neglected to comply with said demand, asserting that it did in fact purchase the bonds and hold them for plaintiff, but that the same have been lost or stolen. It is further alleged that, if defendant did in fact purchase and receive the bonds, defendant did not advise him of that fact until after the alleged loss of the bonds, and that, if such bonds were in fact so procured, defendant retained the possession thereof at its own risk, and that, if they were lost, the loss occurred through the negligence of the defendant. Plaintiff still further alleges that the bank held itself out to the plaintiff and to the public as a safe and secure depository, and represented to plaintiff that the deposit with it of said bonds was fully covered by insurance; that defendant advertised to its customers through the public press,

inviting the owners of bonds to leave them for safe-keeping with the bank, which could assume responsibility therefor; and that plaintiff, relying upon said representations and promises, was thereby induced to allow said bonds to remain in the custody of the bank.

Answering said claim, the defendant admits that it took the plaintiff's subscription for said bonds and received the money therefor, and that thereafter in due time it notified plaintiff of the receipt of the bonds and offered to deliver the same to him; but asserts that, at his request, they were left in the possession of the bank. It is further alleged that, on the night of January 13, 1920, the bank was entered by burglars, by whom the vault was broken open and the bonds belonging to the plaintiff were stolen and carried away, and that they have never been recovered.

On the trial below, the fact that plaintiff did subscribe for Liberty Bonds to the face value of $1,700 through the defendant bank, of which he was a customer, was admitted. It was further conceded that he paid the bank therefor in full. As a witness, plaintiff testified that the money so paid was never returned to him, nor were the bonds ever delivered or tendered to him. The testimony on part of the defense was to the effect that, having received the bonds on plaintiff's account, it exhibited them and offered to deliver them to him, and that at his request they were allowed to remain in the bank. The defendant's evidence further tended to show that the final payment for the bonds was made about April 11, 1919. The bonds were thereafter placed and kept in a filing case in the bank vault. The vault was not burglar proof, being made of brick, with a door faced with a quarter inch of steel and fastened with a combination lock. Inside the vault was a steel money safe or chest, with a screw type of door some six inches in thickness and secured by time lock. Certain bonds, among which it is claimed were those belonging to plaintiff, were kept in a filing case inside the vault, but outside of the steel safe. Other bonds belonging to the bank itself and some belonging to customers were kept in the steel safe. The evidence further tends to show that the bank received and cared for bonds belonging to its customers, and that,

on October 23, 1919, it published in the local newspaper an advertisement reading as follows:

"The First National Bank Bond Service. Should you find it necessary to dispose of your Liberty Bonds, we will pay you the current market price, paying you cash therefor. Or, if you desire to leave your bonds with us for safe-keeping, we will issue you a receipt for them and assume full responsibility. If you have registered bonds to dispose of, remember we are the only bank in town that can certify your signature on same. Cash paid for your matured coupons on presentation. Yours for service in any of your bond transactions. We pay you five per cent on time deposits. The First National Bank. 'Always.'"

The trial court excluded this evidence on the objection of the defendant, a ruling to which we shall again refer.

Concerning the alleged burglary and loss of the bonds, defendant's showing was to the effect that, on the night of January 13, 1919, the bank was entered by persons unknown, who gained access to the vault by burning out the lock upon the vault door, and stole therefrom the bonds, or part of the bonds, including those belonging to plaintiff. The bonds so stolen were those kept in the filing case in the vault, outside of the steel safe. The safe was not broken open, and none of the money or securities kept therein was lost or disturbed. In cleaning up the bank after the burglary, bonds were discovered which appear to have been overlooked by the burglars, to the amount of $8,000. The bank itself lost no bonds.

As above noted, the plaintiff offered in evidence the defendant's advertised offer of safe-keeping for Liberty Bonds, but defendant's objection thereto was sustained; and error is assigned upon that ruling. Plaintiff further offered to prove the cashier's statement to one Butcher, having bonds in the bank, that the bank's vault was burglarproof and fireproof, and was insured to a large amount. This was also excluded. At the close of the evidence, defendant moved for a directed verdict in its favor. The grounds assigned for the motion are varying forms of the single proposition that the evidence in the case is insufficient to sustain a verdict for the plaintiff. The motion

was sustained, and verdict returned as directed.    Judgment was entered accordingly, and plaintiff appeals.

I.    At the outset, appellee raises the question that the direction of a verdict by the trial court will not be held erroneous unless this court has all the evidence before it.    The abstract

1. APPEAL AND ERROR: abstracts of record: denial revealing immaterial omission.

filed by the appellant is certified in the usual manner, and under our present statute and rules of practice, it will be presumed to contain the record, unless challenged by proper denial or amendment.    Appellee has filed an amendment, setting out some of the evidence in greater detail than was done by the appellant; and together they must be presumed to present all the material record, unless it is further held that, because of certain denials by the appellee, this presumption cannot prevail. It appears from the amendment that upon the trial several exhibits were offered and admitted in evidence.    Among them were certain bank checks given by plaintiff in payment for the bonds; also, the original written application by plaintiff for the purchase of Liberty Bonds; also, a written "slip" containing the serial numbers of the bonds purchased.    These exhibits are not set out in appellant's abstract.    In their amendment, counsel for appellee call attention to this omission of the exhibits, and say they are "unable to find them."    Certifying to the amendment, counsel further state that, on account of certain exhibits, being lost, they are unable to set them out, and add:

"We further deny that appellant's abstract is a complete abstract of the whole record in the case, and we certify that the two abstracts together do not contain all of the evidence offered and received upon the trial of the cause."

Neither the statute nor the rule requires an abstract to present the record or evidence in its absolute or literal entirety, in order to entitle an appellant to a hearing.    Code Section 4118; *Vaughn v. Smith & Co.,* 58 Iowa 553; *Tootle, H. & Co. v. Taylor,* 64 Iowa 629; *Huff v. Farwell,* 67 Iowa 298.

The mere general allegation by appellee that the appellant's abstract does not disclose all the evidence is too general and will not be considered.    *Kossuth County St. Bank v. Richardson,* 132 Iowa 370, 377.    The denial, to be of any effect under our

rules, must "point out, as specifically as the case will permit, the defects alleged to exist in the abstract."· In the absence of such specific denial, "the abstract, with amendments and additions, is presumed to contain the record with sufficient completeness to enable the court to pass upon every question raised." *Kossuth County St. Bank v. Richardson,* supra. And if the alleged defect, when pointed out, appears to be in regard to matter not at all material to a proper determination of the appeal, it will be disregarded. As we have already noted, appellee has sought to meet this requirement by filing an amended abstract, which has not been denied; and, according to the well settled practice, if the record as shown by the amendment differs in any material respect from the appellant's abstract, the · former will be presumed to be correct. If, however, the matter set up in the amendment is immaterial to a decision upon the question raised by the appeal, or is matter upon which there is no material dispute between the parties, such amendment is unnecessary, and its filing can have no effect upon the appellant's right to have his appeal considered. The alleged defect in appellant's abstract relates, as we have seen, to the omission therefrom of the bank checks given by plaintiff in payment for his bonds, a memorandum of the serial numbers of the bonds purchased, and the written application made by the plaintiff for such purchase. The absence of these papers from the record presented here in no manner affects the rights of either party. On the trial below, the appellee admitted taking the plaintiff's subscription for the bonds, and receiving full payment therefor. It admitted also having received the bonds, and having undertaken or consented to hold them for the plaintiff, and that it did in fact retain such possession until their alleged loss by burglary. There is no plea or proof that the bonds were ever returned or surrendered to plaintiff. It was claimed, and there is evidence offered by defendant to show, that there had been an actual or symbolical delivery of the bonds across the bank counter; but the fact in this respect is immaterial here, for it was conceded that the bonds were then left with the bank, and had not been returned or redelivered at the time of their alleged loss. The proof and identity of plaintiff's checks by which the admitted

·payments were made, or of the written application for the ad-
mitted purchase of the bonds, or of the written memorandum of
their serial numbers, are wholly immaterial to a decision of the
one question whether the loss of the bonds took place under
circumstances rendering the appellee liable to account therefor
to the appellant; and the omission or inclusion of the described
exhibits in the abstract is a matter of no moment.

It follows that the appellee's objection to the sufficiency of
the record to enable this court to pass upon the ruling below
directing a verdict for the defendant is not well taken; and the
question whether plaintiff was entitled to have his claim sub-
mitted to the jury is properly before us for decision. The assign-
ment of error upon this ruling will now be considered.

Under the issues joined, and upon the conceded fact that
defendant did receive the plaintiff's money for the purchase of
the bonds, and did in fact hold the bonds in its possession for
plaintiff's use or benefit, and that, when a deliv-
ery or return of the bonds to the plaintiff was
demanded, defendant did not and could not
comply with such demand, on the plea that said securities had
been lost or stolen, the burden was upon it to show, not only
the alleged loss, but also that such loss had occurred under cir-
cumstances which relieved it from liability. *Sherwood v. Home
Sav. Bank,* 131 Iowa 528, 532; *Hunter v. Ricke Bros.,* 127 Iowa
108, 111; *Miller v. Miloslowsky,* 153 Iowa 135, 137; *Funkhouser
v. Wagner,* 62 Ill. 59; *Davis v. Tribune Job Ptg. Co.,* 70 Minn.
95 (72 N. W. 808); *Baehr v. Downey,* 133 Mich. 163 (94 N. W.
750); *Nutt v. Davison,* 54 Colo. 586, 588 (131 Pac. 390). See,
also, cases cited in Note 88, 6 Corpus Juris 1166, 1168, 1169.
It is true that, when this burden has been met by a showing
sufficient to rebut the presumption of negligence arising from
the failure to redeliver the subject of the bailment, the burden
of proving negligence is upon the bailor, and if there be no other
fact or circumstance shown from which the jury may properly
find a want of due care by the bailee, there can be no recovery.
*Hunter v. Ricke Bros.,* 127 Iowa 108, 111. In the cited case,
this rule was applied because it there appeared that plaintiff
''relied solely'' upon the presumption; but the court was there

2. BAILMENT:
banker as gratu-
itous bailee.

careful to point out that a plaintiff may still recover if he "shall
go farther, and either disprove the asserted cause of loss or
make it appear that a want of ordinary care on the part of the
bailee co-operated with such destroying cause."

In the case now before us, the plaintiff does not rely solely
upon the presumption arising from defendant's failure to re-
deliver the bonds, but offers evidence of facts and circumstances
tending to show want of due care by the bailee; and it is his
contention that the evidence as a whole, when given its most
favorable construction in support of his claim, presents a ques-
tion of fact, upon which he was entitled to go to the jury. A
careful review of the entire record forces us to the conclusion
that appellant's assignment of error upon the ruling of the
court at this point, sustaining the defendant's demand for a
directed verdict, is well taken, and that the motion should have
been denied. That the case, even as made and relied upon by
defendant, is one between bailor and bailee, cannot be doubted.
We shall not take time for any prolonged discussion upon the
classification of bailments. There is no presumption that this
bailment was gratuitous, and there is no evidence on that sub-
ject, unless it be an inference drawn from some of the testimony
that nothing was said between the parties upon the matter of
compensation. If any inference upon the subject is to be in-
dulged in, it may well be of the character spoken of by us in the
*Sherwood* case, where it is said that:

"An institution whose avowed object is to make money
cannot be assumed to pursue the business of receiving such de-
posits save for some anticipated advantage to itself, and the
drawing or retaining a paying business furnishes as good a
reason as though direct compensation were required."

In other words, the taking and holding of such deposits by
a bank for its customers is a transaction to the mutual advan-
tage of the bailor and bailee, and not solely a matter of mere
accommodation to the former. For the purposes of this appeal,
however, we will assume that the bailment may be treated as
gratuitous. Even so, the concession does not advance us be-
yond the threshold of the case. A gratuitous bailee, receiving
into his possession the valuable property of another for safe-

keeping, enters into a contract relation with the bailor, a rela-
tion by which he becomes charged with an enforcible obligation
for the benefit of the latter. The fact that there is no payment
provided or promised for the service so rendered is a material
circumstance, as bearing upon the amount and kind of care
which he is bound to give to the thing bailed; but it does not
operate as an absolution from all liability on his part. Under
the earlier authorities, this branch of the law became compli-
cated and not a little obscured by learned and hairsplitting dis-
tinctions by which the care required at the hands of a bailee
was "slight" or "ordinary" or "great," and the negligence
for which he might be held was "slight," "ordinary," or
"gross," according to varying circumstances. These ancient
rules and distinctions still survive in some jurisdictions, but
with a manifest tendency to a relaxation in technical strictness
of application. In this state we have refused to recognize the
so-called "degrees" of care and negligence. All "due care"
is reasonable care; and conversely, "reasonable care" is due
care. The inquiry in the case of a bailment involves considera-
tion of the nature and character of the thing bailed; the meas-
ures ordinarily employed for its protection and preservation;
the care which the ordinary or average person is accustomed to
exercise in caring for his own property of like nature and value;
the compensation or absence of compensation received or to be
received for the service; and all the other material facts from
which the impartial trier of facts may reach a just and fair
answer to the inquiry whether the bailee has taken that care
of the thing intrusted to him which may reasonably be demanded
of him. It is well settled in law, as well as in the minds of all
just men, that the bailee serving without compensation should
not be held to that high standard of requirement which may
reasonably be insisted upon as against one who serves for hire;
and if, without negligence or wrong on his part, the thing bailed
is lost or destroyed, he is relieved from responsibility. There
is, however, a reasonably well defined rule by which to test or
measure the extent of his duty and liability to the bailor. In
*Sherwood v. Home Sav. Bank,* 131 Iowa 528, 536, where the

defense, as in this case, was based on the theory that the bank was, at most, a gratuitous bailee, we said:

"Conceding the deposit to have been gratuitous, we inquire what is the duty of a bank in care of bonds or other papers deposited for safe-keeping. No one would contend that it should be held as an insurer. On the other hand, such papers are left with banks because of their special facilities for safely keeping them. Their duty is to be measured somewhat by their situation, and it is exacting none too much to require that banks accustomed to receive such deposits *exercise that care which business men of prudence would exercise in keeping property of like* value in like circumstances."

The Massachusetts court says that:

"Everyone who receives the goods of another in deposit impliedly stipulates that he will take some degree of care of it. The degree of care which is necessary to avoid the imputation of bad faith *is measured by the carefulness which the depositary uses towards his own property of similar kind.*" *Altman v. Aronson,* 231 Mass. 588 (121 N. E. 505).

And again, in the same case, the court says:

"The duty which the law imposes on gratuitous bailees is that the bailee shall act in good faith. That is, shall use the degree of care in the performance of the undertaking which is measured by the carefulness which the depositary uses toward his own property of similar kind, under like circumstances."

The same holding is repeated by the same court. *Rubin v. Huhn,* 229 Mass. 126 (118 N. E. 290). See, also, *Merchants Bank v. Affholter,* 140 Ark. 480 (215 S. W. 648); *Boyden v. Bank of Cape Fear,* 65 N. C. 13; *First Nat. Bank v. Graham,* 79 Pa. 106.

Quite in point, also, is the statement of the rule by the Vermont court, in *Whitney v. First Nat. Bank,* 55 Vt. 154, that the duty of the bailee in such case required it to keep the bonds in good faith *within its safe, under all the safeguards afforded to like property of its own.*

It would be a very violent departure from this rule for us to hold, as a matter of law, that the claim of plaintiff in this case has no foundation except the presumption which attaches

to its failure to redeliver the bonds on demand, or to further hold, as a matter of law, that such presumption has been successfully rebutted. Under the evidence, even that of defendant itself, the jury would have been authorized to find that it did not use the care in keeping the plaintiff's bonds which it habitually used in the care of its own property of similar kind. It is a significant fact that, while carefully securing the safety of its own bonds in the steel chest, and thereby foiling the robbers and saving itself against the loss of a dollar, it left the bonds which it held in bailment outside the chest, unprotected except by the comparatively flimsy brick wall of the vault, which offered no effective resistance to enterprising burglars. We do not for a moment intimate any complicity of the bank or its officers in the crime committed, but we think it too clear for serious argument that the question whether the bank, acting by its officers and agents, exercised the care reasonably required of it to preserve the deposit placed in its keeping, was a question of fact for the jury, and not of law for the court. *Preston v. Prather*, 137 U. S. 604; *Merchants Bank v. Affholter*, 140 Ark. 480 (215 S. W. 648) ; *Skelley v. Kahn*, 17 Ill. 170.

II. We are disposed, also, to hold that the court erred in ruling out the evidence relating to the advertised offer of the bank to receive such deposits. We so hold, not because the

3. BAILMENT: evidence.

advertised offer affords in itself any right of action to the plaintiff, but because it is a quite material circumstance, tending to show that the bank was acting as a depository of bonds and soliciting business of that kind, and that the taking or holding of plaintiff's bonds was not an isolated or exceptional instance, outside of its ordinary line of business.

As what we have already said necessitates a reversal of the judgment below and a remand of the case for new trial, we pass other questions argued by counsel without discussion. The judgment appealed from is reversed, and new trial ordered.— *Reversed.*

Evans, Preston, and De Graff, JJ., concur.

Stevens, C. J., took no part in the decision of this case.