STATE *Ex Rel.* CLYDE DIXON HINKLE

*v.*

OREL J. SKEEN, *Warden*

(No. 10553)

Submitted February 24, 1953. Decided March 24, 1953.

*Peter Barrow, Jr.,* for petitioner.

*John G. Fox,* Attorney General, *T. D. Kauffelt,* Assistant Attorney General, for defendant.

GIVEN, JUDGE:

In a petition apparently prepared without aid of counsel, filed in this Court on January 7, 1953, Clyde Dixon Hinkle, hereinafter referred to as petitioner, a prisoner confined in the West Virginia State Penitentiary, prayed a writ of habeas corpus *ad subjiciendum,* directed to the defendant, Oral J. Skeen, Warden. This Court, believing that the petition possibly raised questions of importance as to petitioner's rights, awarded the writ and made the same returnable February 10, 1953. Filed with the petition was an affidavit of petition showing that he had no means of employing counsel and, at the time of awarding the writ, this Court appointed counsel to assist the petitioner in the prosecution of this proceeding. On motion of counsel for petitioner, the hearing was continued to February 24, 1953, at which time petitioner was in court with counsel. The Attorney General of the State appeared on behalf of the defendant and filed a demurrer to the petition. Defendant also answered the petition. It was agreed at bar, however, that no question of fact

existed. The matter was submitted on the pleadings, briefs and oral arguments of counsel for the parties.

The petitioner alleges that he is unlawfully detained, for the following reasons:

"1. Petitioner alleges that his confinement in the West Virginia State Penitentiary is illegal and in violation of the West Virginia Code because at the time that he was sentenced to undergo confinement in said penitentiary he was but fifteen (15) years of age having been born on the 4th day of June 1927, whereas petitioner was committed to the West Virginia State Penitentiary on the 5th day of December, 1942. Petitioner further avers that he was treated throughout the proceedings from time of arrest, conviction and the pronouncement of judgment, as an adult of legal age.

"2. Petitioner avers that he was held incommunicado in the Nicholas County Jail and refused the right to summon witnesses for his defense.

"3. Petitioner charges that he was led to believe that he would not have to serve over five years incarceration if he would enter a plea of guilty, whereas petitioner has been confined in prison for a period of over ten years.

"4. Petitioner avers that he was too young and ignorant to the ways of a criminal proceeding and was forced by the threats of certain police officers to enter a plea of guilty without knowledge or understanding of the severity of the charge to which he was pleading to.

"5. Petitioner alleges that the Nicholas County Authorities had him confined in the criminal cell block for adults in the Nicholas County Jail even though he was a juvenile. It is the contention of petitioner that said confinement was illegal, whereas petitioner was also sentenced to confinement in the penitentiary and committed to the said penitentiary at the age of (15) fifteen."

The demurrer to the petition assigns the following grounds:

"1. The petition shows on its face that petitioner was indicted for the crime of murder in the Circuit Court of Nicholas County and plead guilty to second degree murder before said court.

"2. The fact that petitioner was refused the right to summon witnesses for his defense does not void the indictment, for the reason that he entered a plea of guilty and could have no reason to have witnesses present.

"3. Petitioner plead guilty to second degree murder, the punishment for which is set by statute, and the length of which punishment the petitioner could have known by inquiring of his attorneys.

"4. The place of petitioner's confinement pending indictment and trial, whether proper or improper, is not of such a nature as to make the indictment and sentence void.

"5. The second, third, fourth, and fifth grounds assigned by petitioner for issuance of the writ are not proper in a petition for a writ of habeas corpus, as they are not jurisdictional."

Petitioner having admitted at bar that the demurrer should be sustained as to Points 2, 3, 4 and 5 of the petition, we need not give further consideration to the questions therein attempted to be raised.

The record discloses that petitioner was indicted by a grand jury in the Circuit Court of Nicholas County on the 17th day of November, 1942, for murder, which was alleged to have been committed by him on the _____ day of August, 1942. The indictment charges that the crime was committed feloniously, willfully, maliciously, deliberately and unlawfully. On November 23, 1942, petitioner entered a plea of guilty to murder of the second degree and, on December 2, 1942, was sentenced by the Circuit Court of Nicholas County to the West Virginia State Penitentiary, for a term of from five to eighteen

years. Petitioner was born June 4, 1927, and therefore was between the ages of fifteen and sixteen years at the time the crime was alleged to have been committed. At the time he entered the guilty plea he was represented by two competent attorneys, appointed by the court to defend him against the charges contained in the indictment. The State, through the prosecuting attorney of Nicholas County, agreed that the plea of murder of the second degree be accepted. It is not contended that the circuit court, in the criminal proceeding, was advised as to the age of petitioner. The petitioner, in his petition, says that he was "treated throughout the proceedings from time of arrest, conviction and the pronouncement of judgment, as an adult of legal age."

The questions to be answered relate to the jurisdiction of the Circuit Court of Nicholas County. Could that court sentence the petitioner, a juvenile, on a plea of second degree murder, or was that court required, by the statutes dealing with juvenile delinquents, to certify the matter to a juvenile court for preliminary action? Assuming that the circuit court acquired jurisdiction of the criminal cause of action by virtue of the indictment charging murder of the first degree, a capital offense, did that court lose jurisdiction upon its acceptance of the plea of murder of the second degree, a non-capital offense? Assuming that the statute, Code, 49-5-3, attempts to vest in juvenile courts exclusive jurisdiction to hear all criminal charges, not capital in their nature, against juveniles, is such provision constitutional?

By Chapter 1, First Extraordinary Session, 1936, Acts of the Legislature, now part of Chapter 49, of the official Code, there was provided a comprehensive system of child welfare throughout the State. Article 5 thereof, now Code, 49-5, as amended, dealt with juvenile courts. Section 1 of that article, as amended, provides: "The circuit court of the county shall have original jurisdiction in proceedings brought by petition under this article. If,

however, a court of record in addition to the circuit court has been or is subsequently created in a county, proceedings under this article shall be held in the additional court with right of appeal to the circuit court as follows: (1) The domestic relations court, or if there is none, (2) The court of common pleas or intermediate court having chancery jurisdiction, or if there is none, (3) The criminal court." No "court of record in addition to the circuit court" exists in Nicholas County. The pertinent part of Section 2 of Article 5 reads: "* * * A person subject to the jurisdiction of the juvenile court may be brought before it by either of the following means and no other: (a) By petition praying that the person be adjudged neglected or delinquent; (b) Certification from any other court before which such person is brought, charged with the commission of a crime."

Of primary importance in consideration of the questions is Section 3, which we quote:

"Except as to a violation of law which if committed by an adult would be a capital offense, the juvenile court shall have exclusive jurisdiction to hear and determine criminal charges including a charge of violation of a municipal ordinance, against a person who is under eighteen years of age at the time of the alleged offense.

"If during the pendency of a criminal proceeding against a person in a court other than a juvenile court, it shall be ascertained, or it shall appear, that the person was under the age of eighteen years at the time of the alleged offense, the court, judge or magistrate shall immediately transfer the case with all the papers, documents, and testimony connected therewith to the juvenile court having jurisdiction. The juvenile court shall proceed to hear and dispose of the case in the same manner as if it had been instituted in that court in the first instance."

Section 14 defines what disposition a juvenile court

may make of a neglected or delinquent child, after hearing: "* * * (1) Treat the child as a neglected child, in which case the provisions of article six of this chapter shall apply. (2) Order the child placed under the supervision of a probation officer. (3) If the child be over sixteen years of age at the time of the commission of the offense the court may, if the proceedings originated as a criminal proceeding in a court other than a juvenile court, enter an order transferring the case back to the court of origin, or to any court in the county having criminal jurisdiction; or if the case originated on petition in juvenile court, the court may enter an order showing its refusal to take jurisdiction and permit the child to be proceeded against in accordance with the laws of the State governing the commission of crimes or violation of municipal ordinances. (4) Commit the child to an industrial home or correctional institution for minors. (5) Commit the child to any public or private institution or agency permitted by law to care for children. (6) Commit the child to the care and custody of some suitable person who shall be appointed guardian of the person and custodian of the child. (7) Enter any other order which seems to the court to be to the best interests of the child." It may be noted that a juvenile court is not expressly authorized to commit any juvenile to any penal institution.

Code, 61-2-1, defines murder of the first degree as "Murder by poison, lying in wait, imprisonment, starving, or by any wilful, deliberate and premeditated killing, or in the commission of, or attempt to commit, arson, rape, robbery or burglary," and makes all other murder "murder of the second degree". Code, 61-11-2, provides that "No crime shall be punished with death unless it be directed by statute." Code, 61-2-2, provides that "Murder of the first degree shall be punished with death, except as provided in article three, chapter sixty-two of this Code." The provision in article three referred to is Code, 62-3-15, and in so far as material here, reads: "If a per-

son indicted for murder be found by the jury guilty thereof, they shall in their verdict find whether he is guilty of murder of the first or second degree. If they find him guilty of murder of the first degree, they may, in their discretion, further find that he be punished by confinement in the penitentiary. If such further finding be not added to their verdict, the accused shall be punished with death, but, if added, he shall be punished by confinement in the penitentiary during his life. * * *."

These statutes, we think, make it clear that in this State murder of the first degree is a capital offense, while murder of the second degree, the offense to which petitioner entered his plea of guilty, is not a capital offense.

In *State* v. *Schnelle,* 24 W. Va. 767, Point 4, syllabus, it is held: "In this State there is no such thing as an indictment for murder in the *first* or *second* degree; the indictment is for *murder,* and it depends upon the proof, whether it is in the *first* or *second* degree." See *State* v. *Smith,* 24 W. Va. 814; *State* v. *Flanagan,* 26 W. Va. 116; *State* v. *Douglass,* 41 W. Va. 537, 23 S. E. 724; *State* v. *Johnson and Divinney,* 49 W. Va. 684, 39 S. E. 665; *State* v. *McMillion,* 104 W. Va. 1, 138 S. E. 732. Code, 62-9-3, gives us a form of indictment for murder, and the indictment returned against petitioner herein is substantially in accord therewith. Relating to offenses included in such an indictment, that section also provides that: "* * * Upon the trial of such indictment the accused may be convicted of either murder of the first degree, murder of the second degree, voluntary manslaughter, or involuntary manslaughter, as the evidence may warrant."

Petitioner concedes, as indeed he must, that the circuit court acquired jurisdiction to try him as to the capital offense charged in the indictment. Section 12 of Article VIII of the State Constitution provides that circuit courts shall have "original and general jurisdiction * * * of all crimes and misdemeanors. * * *." The indictment returned by the grand jury in the Circuit Court of

Nicholas County, charging the petitioner with murder, a capital offense, gave that court jurisdiction of that particular offense. 22 C. J. S., Criminal Law, Section 143. Petitioner's presence in court, even though brought into court by arrest, gave the court jurisdiction of the person. 22 C. J. S., Criminal Law, Section 144.

The juvenile statutes do not attempt to interfere with the criminal jurisdiction of circuit courts relating to capital offenses. Neither do the statutes attempt to bestow upon juvenile courts any criminal jurisdiction. The trial of a juvenile for delinquency is in no sense a criminal trial. Such a trial is in fact for the purpose of relieving a juvenile of a criminal trial, at least in most cases. Notwithstanding the juvenile court hears evidence as to whether the juvenile committed a criminal offense, the hearing of such evidence is merely for the purpose of determining whether the juvenile is delinquent. In other words, whether the child may be treated as a delinquent depends on whether he has committed a criminal offense. The juvenile court is not empowered to sentence a juvenile for the commission of a crime.

The precise question here is whether the circuit court lost jurisdiction by accepting the plea of guilty of murder of the second degree, a non-capital offense. The question is not easily answered. Looking alone to the language of the statute, Code, 49-5-3, it would appear that the juvenile courts were given "exclusive jurisdiction to hear and determine criminal charges" against juveniles, except charges constituting capital offenses. But if such meaning be given the statute, then we may face the question whether it violates the provision of the State Constitution quoted above, vesting "original and general" criminal jurisdiction in the circuit courts. The construction of a constitutional provision will be avoided where some other reasonable interpretation thereof may be found. *Norris* v. *County Court,* 111 W. Va. 692, 163 S. E. 418.

We do not reach the constitutional question. We need

not decide whether a circuit court is precluded from taking jurisdiction in the first instance of an offense other than a capital one. Here the offense charged was a capital offense and, by Code, 49-5-3, any jurisdiction relating to that offense was expressly denied juvenile courts. Jurisdiction of such offense remained in the circuit courts, or in inferior courts, where created and granted such jurisdiction by legislative enactment. Nothing in the pertinent statutes quoted above indicates any legislative intention to relieve juveniles of criminal liability as to capital offenses, or to deny jurisdiction of such offenses to the circuit courts.

The question as to whether a circuit court, having acquired jurisdiction of an offense capital in its nature, loses jurisdiction to a juvenile court upon the conviction of a juvenile defendant of a non-capital offense, has been considered by courts of other states. In *Howland* v. *State,* 151 Tenn. 47, 268 S. W. 115, wherein the juvenile statutes considered were to the same practical effect as are such statutes in this State, and wherein the question involved, though not raised in a habeas corpus proceeding, appears the same, the Court held, Point 4, Headnotes: "Jurisdiction of criminal court, on indictment of minor under sixteen for murder, being exclusive, *held* not lost on conviction of homicide of lesser degree, in view of Shannon's Code, section 7188, requiring court to charge on all included offenses, and sections 7085 and 7195, providing for conviction under indictment for lesser degrees, since judgment must be on verdict of jury, and jeopardy having once attached jurisdiction may not be relinquished and cause committed to juvenile court." In the opinion the Court stated:

"But where the grand jury presented an indictment for murder against one under sixteen years of age, as was done in this case, the jurisdiction of the criminal court over the offense of murder being exclusive, that court would not thereafter lose its jurisdiction by a verdict assessing a degree of homicide below murder. 16 C. J., 181, pars. 246, 247.

"This follows as a consequence of our statutes. Section 7188, Shannon's Code, requires the trial judge to charge the jury upon all included offenses. Sections 7085 and 7195, provide that upon indictment for any offense admitting of different degrees the defendant may be convicted of the offense charged or any degree below the offense charged. It was incumbent upon the criminal court to impanel a jury and put the accused to trial upon the indictment for murder to ascertain her guilt or innocence.

"The jury, not the judge, determines the degree of homicide, and, until after verdict, the court could not know what degree the jury, in the exercise of their discretion, might find. The judge could not review the discretion thus exercised by the jury, but must write a judgment upon the verdict as reported. After the accused was tried upon the indictment, which included all the degrees of homicide, having been once in jeopardy, jurisdiction could not then be relinquished and the cause committed to the juvenile court. *Tomasson* v. *State*, 112 Tenn. (4 Cates), 596, 79 S. W., 802; *Armstrong* v. *State*, 1 Cold. (Tenn.), 341; *McGinnis* v. *State*, 9 Humph. (Tenn.), 54, 40 Am. Dec., 697."

In *Collins* v. *Robbins, Warden*, _____ Me. _____, 84 A. 2d 536 (1951), the question being considered here was raised in a habeas corpus proceeding. The Court, after reviewing the decisions, including the decision in *Howland* v. *State, supra,* expressly adopted the Tennessee rule, holding, Point 5, Headnotes: "Where petitioner who was under age of 17 years was arraigned in municipal court on charge of murder and bound over to grand jury of superior court which indicted him for murder, which court at time had exclusive original jurisdiction of such crime, it being excepted in statute granting exclusive jurisdiction to judges of municipal courts over offenses committed by persons under age of 17 years, such jurisdiction continued until final disposition of cause and such jurisdiction was not lost when court accepted plea of

guilty of manslaughter, which was a crime over which judges of municipal courts had exclusive original jurisdiction under statute if such crime was committed by persons under age of 17 years."

In *Mickens* v. *Commonwealth,* 178 Va. 273, 16 S. E. 2d 641, certiorari denied, 314 U. S. 690, 62 S. Ct. 362, 86 L. ed. 552, rehearing denied, 314 U. S. 717, 62 S. Ct. 484, 86 L. ed. 570, a negro boy fifteen years of age was convicted of rape and sentenced to the electric chair. It was contended that the circuit court should have transferred the case to the juvenile court for investigation. In the opinion, the Court stated:

"It is thus seen that the matters over which the juvenile courts are given exclusive original jurisdiction are the 'disposition, custody or control of delinquent, dependent or neglected children,' but not their trial and punishment for the offense which they have committed.

"The trial and punishment of minor offenders follows the regular criminal procedure, modified, in certain respects, by the statutes setting up juvenile and domestic relations courts. These statutes have established a system whereby most juvenile offenders are first subjected to the jurisdiction of the juvenile courts for proceedings therein designed to subject such offenders to the supervision and control of the State in a manner in which the delinquent ways of the child will be corrected and he be made to lead a correct life.

"But the provisions contained in these statutes clearly show that the legislature recognized that children who have committed grave offenses could not be properly dealt with according to the methods and procedure established by such legislation. For this reason the regular criminal procedure and the original jurisdiction of circuit courts in felony cases of an aggravated nature are retained." See *In Re Evans,* 67 Ohio App. 66, 35 N. E. 2d 887; *People* v. *Tossey,* 85 Cal. App. 435, 259 P. 488; *People* v. *Wilson,* 78 Cal. App. 2d 108, 177 P. 2d 567;

*Mueller* v. *State,* 119 Tex. Crim. App. 263, 43 S. W. 2d 589; *Garner & Co.* v. *Riley* (Texas 1922), 238 S. W. 953; *Merchants' Bank* v. *Affholter,* 140 Ark. 480, 215 S. W. 648; *Zimmerman* v. *Miller,* 206 Mich. 599, 173 N. W. 364.

The petitioner here relies upon the decision in the case of *State* v. *Dabon,* 162 La. 1075, 111 So. 461, where it is held, Point 4, Headnotes: "Where 15 year old girl, indicted for murder, was convicted in district court of parish of Orleans of manslaughter by verdict of jury, such verdict ousted jurisdiction of district court to try or sentence juvenile defendant ab initio, under Const. 1921, art. 7, §96, conferring jurisdiction upon juvenile court for parish of Orleans to try delinquent children under 17 except for capital crimes, as conviction of manslaughter operated as acquittal of capital offense of murder charged in indictment." Apparently the Louisiana Court construed the constitutional provision mentioned as vesting exclusive jurisdiction of all juvenile offenses committed in the parish of Orleans, except capital crimes, to be in the criminal court. As pointed out above, however, the Constitution of West Virginia grants unto circuit courts "original and general", though not exclusive, jurisdiction of all crimes and misdemeanors. See *Goodfriend* v. *Commonwealth,* 216 Ky. 573, 288 S. W. 330; *In Re Application of Tassey,* 81 Cal. App. 287, 253 P. 948. If, however, the *Dabon* decision is to be construed as denying a circuit court jurisdiction to finally hear and determine a criminal proceeding of which it obtained jurisdiction on the ground that the offense charged in an indictment was a capital offense, for the reason that the defendant, a juvenile at the time the court first acquired jurisdiction, was later determined to be guilty only of a non-capital offense, we think the holding should not be followed in this State.

In 22 C. J. S., Criminal Law, Section 164, it is stated: "As a general rule the jurisdiction of a court depends on the state of facts existing at the time it is invoked, and once jurisdiction of the person and subject matter

attaches it continues until final disposition or determination of the case in the mode prescribed by law, * * * ".

In *Reynolds* v. *Commonwealth*, 94 Va. 816, 27 S. E. 427, the *per curiam* opinion reads: "The accused was indicted and prosecuted for a felony of which the court had original jurisdiction, and although the jury, by their verdict, found the accused not guilty of the felony, but guilty of an assault and battery, — a component part of the offense charged, — yet, the court having properly acquired cognizance of the offense charged, we are of opinion that it was not ousted of its jurisdiction to render judgment on the verdict finding him guilty of the misdemeanor which was included within the felony for which he was indicted and tried."

In 5 M. J., Criminal Procedure, Section 9, it is stated: "Criminal proceedings so far as practicable, and not repugnant thereto, always correspond to civil proceedings unless otherwise provided. There is no material difference in the general rules of pleading in civil and criminal causes. And criminal proceedings against infants ought in all cases, to be conducted in the same manner as against persons of full age." See *City of Charleston* v. *Beller*, 45 W. Va. 44, 30 S. E. 152; *State* v. *Evans*, 33 W. Va. 417, 10 S. E. 792; *Word* v. *Commonwealth*, 3 *Leigh* (30 Va.) 743. In 9 M. J., Infants, Section 13, we find this language:

"As to criminal proceedings of whatever nature, there is no difference between prosecutions of persons of full age and prosecutions against infants, except those substantial distinctions which turn on the question of whether the infant is doli capax, and a distinction in prosecutions against infants for misdemeanors, not admissible in such prosecutions against adults, between misdemeanors of omission and those of commission. An infant must appear and plead in person in cases of felony.

"The trial and punishment of minor offenders follows

the regular criminal procedure, modified, in certain respects, by the statutes setting up juvenile and domestic relations courts, which have established a system whereby most juvenile offenders are first subjected to the jurisdiction of the juvenile courts for proceedings therein designed to subject such offenders to the supervision and control of the state in a manner in which the delinquent ways of the child will be corrected and he be made to lead a correct life. The provision that the court shall appoint a probation officer or a discreet and competent attorney at law to act as guardian ad litem to represent the interests of a child, has no relation to criminal prosecutions. In the trial and punishment of minor offenders in felony cases of an aggravated nature, the regular criminal procedure and the original jurisdiction of circuit courts are retained, since the statutes establishing the juvenile and domestic relations courts clearly show that the legislature recognized that children who have committed grave offenses could not be properly dealt with according to the methods and procedure established by such legislation." In 43 C. J. S., Infants, Section 96, the rule is stated in this manner: "Except as statute may otherwise provide or require, and subject to the duty of the court to safeguard the interests of minors appearing before it, the procedure in criminal cases in which infants are defendants is the same as in the case of adult defendants."

From these authorities, as well as from consideration of the statutory provisions, we are definitely of the opinion that the Circuit Court of Nicholas County did not lose jurisdiction to sentence the defendant in the criminal case, by the acceptance of the plea of guilty of murder of the second degree.

Should the previous question have been decided differently, we would still be compelled to refuse the writ prayed for. As before noted, criminal proceedings, with certain exceptions immaterial here, apply alike to infants and adults, unless some statutory provision provides dif-

ferently. It is also well settled in this State that a party may waive the right to challenge the court's jurisdiction of his person. See *Anderson* v. *Anderson*, 121 W. Va. 103, 1 S. E. 2d 884; *Yates* v. *County Court*, 47 W. Va. 376, 35 S. E. 24. It appears to be the general rule that a minor may waive his right to object to the jurisdiction of the court. *State* v. *Klingenberger*, 113 Ohio St. 418, 149 N. E. 395; *In Re Evans*, 67 Ohio App. 66, 35 N. E. 2d 887; *People* v. *Tossey*, 85 Cal. App. 435, 259 P. 488; *In Re Application of Tassey*, 81 Cal. App. 287, 253 P. 948; *Fifer* v. *State*, 90 Tex. Crim. App. 282, 234 S. W. 409; *Slade* v. *State*, 85 Tex. Crim. App. 358, 212 S. W. 661; *Mickens* v. *Commonwealth, supra;* 43 C. J. S., Infants, Section 98.

The rule is clearly recognized in Code, 49-5-3, as amended: "If during the pendency of a criminal proceeding against a person in a court other than a juvenile court, it shall be ascertained, or it shall appear, that the person was under the age of eighteen years at the time of the alleged offense, the court, judge or magistrate shall immediately transfer the case * * *." The clear implication seems to be that the court having jurisdiction of the criminal case shall proceed with the disposition thereof the same as if the defendant were an adult, unless it be ascertained or made to appear in the criminal case that the defendant was under the age of eighteen years.

In view of the authorities cited and the statutory provisions, we necessarily hold that petitioner in the instant proceeding, by failure to bring to the attention of the Circuit Court of Nicholas County, in the criminal proceeding, the fact that he was under eighteen years of age, waived any statutory right that he may have had to have his case first heard by a juvenile court. The rule applied does not appear unduly harsh as it relates to infants, for courts are always cautious in seeing that infants charged with crimes of serious nature are represented by counsel.

Probably the decision of this case could have rested upon the fact that Code, 49-5-1, vested in the Circuit Court of Nicholas County "original jurisdiction" to try juvenile cases, there being no inferior court of record in that county. Can the pertinent statutes quoted be construed to mean that a circuit court having jurisdiction of a criminal case is required to certify the case to itself, as a juvenile court, and then, as a juvenile court, certify the case back to the circuit court, before a juvenile could be tried for the crime charged? Could any prejudice result to a defendant because of failure of a court having jurisdiction of the offense and of the person to make such a certification? However that may be, this being a habeas corpus proceeding, and courts being zealous of the rights of those alleged to have been unlawfully denied freedom, we have deemed it proper to consider the questions fairly raised by the record.

From what has been said, it necessarily follows that the prayer of the petition must be denied, the writ heretofore awarded be discharged, and that petitioner be remanded to the custody of respondent.

*Writ discharged;*
*petitioner remanded.*